**UNITED STATES of America, Appellee,**

v.

**David SWEET, Defendant–Appellant.**

**No. 940, Docket 93–1593.**

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1994.

Decided June 6, 1994.

Bonnie Barnes, Middlebury, VT (William K. Sessions III, Sessions, Keiner, Dumont and Barnes, of counsel), for defendant-appellant.

Peter W. Hull, Asst. U.S. Atty., Burlington, VT (Charles R. Tetzlaff, U.S. Atty., for the D. of Vermont, David V. Kirby, Asst. U.S. Atty., of counsel), for appellee.

Before: PRATT, MINER, and CAMPBELL,* Circuit Judges.

---

* Hon. Levin H. Campbell, Senior Judge, United States Court of Appeals for the First Circuit, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

## FACTS AND BACKGROUND

In early 1992 the Northern Vermont Drug Task Force's investigation of cocaine distribution in Burlington, Vermont, focused on the defendant in this case, David Sweet, and his co-defendants, James Ritchie, Jr., Janice Hines–Cherry, and Denise Mayo. The task force enlisted a confidential informant to conduct a series of "controlled" buys from the defendants.

The informant's contact person was Hines–Cherry, who acted as a "middleman" for the sales. His first meeting with her took place on April 14, 1992, in her apartment in Burlington. After the informant expressed his interest in buying cocaine, Hines–Cherry left the apartment to make a telephone call. Shortly thereafter, a man arrived at her apartment and sold the informant 1.5 grams of cocaine. The informant then discussed obtaining larger quantities of cocaine with Hines–Cherry.

Over the next few weeks, the informant purchased cocaine through Hines–Cherry five or six times, in quantities ranging from one-quarter of an ounce to two ounces. All of the sales took place in Hines–Cherry's apartment. The informant typically paid either Hines–Cherry or Ritchie for the cocaine, and paid an additional sum to Hines–Cherry for arranging the sale. For two of the sales, Sweet was present in the apartment; for three others, Sweet was parked in a car across the street. Mayo was present during one of the sales and was sitting in the car with Sweet during another.

The last sale, in which the informant gave Ritchie $3200 for two ounces of cocaine, occurred on June 27, 1992. During the transaction, the informant arranged with Ritchie for the purchase of three more ounces of cocaine five days later, at 5 p.m. on July 2, 1992. Although Hines–Cherry was present during the sale and the discussion of a future three-ounce sale, neither Sweet nor Mayo were there.

The three-ounce transaction never happened, however, because all four defendants were arrested on July 2, 1992. Sweet and Mayo were arrested while they were driving in Sweet's car, several miles away from Sweet's home. Nothing incriminating was found on their persons or in the car. The police obtained search warrants for Sweet's, Ritchie's, and Hines–Cherry's residences. From Sweet's trailer in St. George, Vermont, they seized $3547 in cash, a handgun, and a rifle.

Hines–Cherry and Ritchie both made post-arrest statements that implicated Sweet and Mayo. They claimed that Sweet was their "supplier" and that Sweet and Mayo made frequent trips to Boston to obtain cocaine. Hines–Cherry stated that she only arranged sales; Ritchie stated that he made deliveries. In addition, Ritchie said that Sweet typically returned to his trailer with the cocaine from Boston, doubled its quantity by mixing it with Inositol, a cutting agent, and then hid it behind his trailer.

The grand jury returned a one-count indictment against all four defendants—Sweet, Ritchie, Hines–Cherry, and Mayo—charging them with cocaine distribution in violation of 21 U.S.C. § 841(a)(1), for the June 27, 1992, transaction. All four pled guilty. Under Sweet's plea agreement, the government agreed to recommend sentencing at the low end of the applicable guideline range and an appropriate reduction for acceptance of responsibility.

At Ritchie's sentencing, the government urged the district court to include in its calculations the three ounces of cocaine negotiated on June 27, 1992. The informant testified about the negotiations. He also said that Sweet and Ritchie were partners, but that he did not know who was the source of supply or whether one acted as a messenger for the other. The government also played a tape of the June 27, 1992, conversation between Ritchie and the informant. After hearing this evidence, the district court decided not to include the negotiated three ounces in Ritchie's base offense level, because it could not "find, as a preponderance of the evidence, that the transaction * * *, namely the request for the sale of three ounces, was one that [Ritchie] was capable of delivering on". Therefore, Ritchie was sentenced on the basis of 3.25 ounces of cocaine,

which was the total amount of the three completed sales for which he was present.

Two months later, the court sentenced Sweet. The presentence report recommended excluding the negotiated quantity of cocaine from Sweet's base offense level. After a review of the task force records and the tape of the June 27, 1992, negotiation, the probation department had concluded that there was no evidence indicating that Sweet was aware of the negotiations or that he intended to produce the three ounces of cocaine. At Sweet's sentencing hearing, the government presented no evidence pertaining to the inclusion of the three-ounce transaction.

Nevertheless, the district court found that Sweet was the source of supply, that it was foreseeable to Sweet that Ritchie would engage in further negotiations, and that Sweet was capable of supplying the three additional ounces of cocaine. He therefore included the negotiated three ounces in his calculation of Sweet's base offense level. Thus, the amount of cocaine under negotiation was factored into Sweet's sentence, although Sweet was not privy to the negotiation; but it was not factored into Ritchie's sentence, although Ritchie was the one who negotiated the transaction.

The district court sentenced Sweet based on eight ounces of cocaine: five from the completed sales and three from the negotiation. Starting from a base offense level of 20, see U.S.S.G. § 2D1.1(c), the district court then imposed a two-level upward adjustment for possession of a dangerous weapon during the offense. See U.S.S.G. § 2D1.1(b)(1). After a three-level decrease for acceptance of responsibility, see U.S.S.G. § 3E1.1, Sweet's final offense level was 19. Given Sweet's criminal history category of I, the applicable guideline range was 30–37 months. The district court sentenced Sweet to 30 months.

Sweet now appeals, challenging two aspects of his sentence. First, he argues that the district court erred in imposing the two-level upward adjustment for weapons, because there was no evidence that the guns seized from his trailer were connected to the drug transactions. Second, he argues that the district court improperly included the three ounces of cocaine negotiated by the informant and Ritchie in its calculation of his base offense level. For the reasons set forth below, we affirm on the first point, but reverse on the second.

## DISCUSSION

### A. Weapons Adjustment

 Guideline 2D1.1(b)(1) provides for a two-level upward adjustment if a dangerous weapon was possessed in connection with the unlawful manufacturing, importing, exporting, or trafficking of drugs. According to the accompanying commentary,

[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1, comment. (n. 3). Therefore, it is appropriate to apply the upward adjustment in this case unless it is "clearly improbable" that the weapons seized from Sweet's trailer were connected to his cocaine distribution activities.

Sweet argues that the government failed to prove that the two guns seized from his trailer bore any connection to his offense. He stresses that all of the sales took place at Hines–Cherry's apartment in Burlington, not at his trailer in St. George, and that he was arrested several miles away from his home. In addition, he points out that no drugs or drug paraphernalia were found in his trailer. Because the guns were neither present during nor connected to his commission of the offense of conviction, Sweet asserts that the district court's imposition of a two-level increase for possession of a weapon during a drug offense was clearly erroneous.

We disagree. Applicability of the specific offense characteristic of weapons possession during a narcotics offense is governed by the relevant-conduct guideline. See U.S.S.G. § 1B1.3(a)(ii); United States v. Quintero, 937 F.2d 95, 97 (2d Cir.1991); United States v. Pellegrini, 929 F.2d 55, 56 (2d Cir.1991) (per curiam). With offenses that involve "aggre-

gate harms", such as drug offenses, relevant conduct consists of all "acts and omissions * * * that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see Pellegrini,* 929 F.2d at 56.

Here, the two guns were seized from Sweet's residence. The district court found not only that Sweet stored the cocaine at his residence, but also that he "cut" the cocaine to double its quantity there. Because these findings are supported by the record, we cannot say that they are clearly erroneous.

We have previously upheld the imposition of a weapons adjustment under § 2D1.1(b)(1) when a weapon was present on the premises where the drugs were being stored, even if the evidence did not show that the weapon was "possessed during commission of the offense". *Pellegrini,* 929 F.2d at 56; *see United States v. Wilson,* 11 F.3d 346, 355 (2d Cir.1993) (gun found in apartment where drugs were stored and proceeds from drug sales were kept); *United States v. Schaper,* 903 F.2d 891, 896 (2d Cir.1990) (gun found in house where cocaine was stored and records of transactions were kept).

Because storing and cutting drugs is "relevant" to the offense for which Sweet was convicted, the two-level increase based on the weapons' presence at Sweet's residence was appropriate. We therefore affirm the district court's imposition of an upward adjustment under § 2D1.1(b)(1).

## B. *Base Offense Level*

■ Sweet also challenges the amount of cocaine upon which the district court determined his base offense level. He argues that the three ounces of cocaine that Ritchie negotiated to sell to the informant should have been excluded from the district court's calculations, because there was no evidence that he even knew about the negotiated deal, much less that he intended to supply the cocaine.

The weight of negotiated but uncompleted drug sales should usually be included in calculating a defendant's sentence under § 2D1.1.

However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

U.S.S.G. § 2D1.1, comment. (n. 12). Therefore, when a defendant disputes her intent or ability to produce the amount under negotiation, the district court should make specific findings on those questions. *United States v. Stevens,* 985 F.2d 1175, 1183 (2d Cir.1993); *United States v. Jacobo,* 934 F.2d 411, 416 (2d Cir.1991) (court should "make findings as to whether the defendant intended to produce the negotiated amount and was reasonably capable of producing that amount").

Here, Sweet has consistently maintained that he had nothing to do with the June 27, 1992, negotiations and challenged the inclusion of the negotiated three ounces in the determination of his sentence. Therefore, the district court was obligated to make findings as to Sweet's intent and ability to deliver the promised three ounces. Although the district court did determine that Sweet was capable of supplying the three ounces, it made no finding regarding Sweet's intent to produce the three ounces. We therefore reverse the district court's calculation of Sweet's base offense level and remand for resentencing.