William Nelson RIVERA, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 92 Civ. 6100 (DNE).

United States District Court,
S.D. New York.

July 24, 1995.

William Nelson Rivera, pro se.

## OPINION & ORDER

EDELSTEIN, District Judge:

Petitioner, *pro se*, brings this motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.[1]

### BACKGROUND

On February 29, 1988, two individuals were arrested in Fayetteville, North Carolina after their car was stopped by a North Carolina State Highway Patrolman. Upon searching the car, the patrolman found approximately four kilograms of cocaine. One of the two individuals arrested thereafter became a confidential informant. The confidential informant stated that the four kilograms of cocaine were being transported from Florida to New York for delivery to petitioner William Nelson Rivera. The confidential informant also provided two of petitioner's telephone numbers, one for petitioner's home in New Jersey and one for another location in New York City. The North Carolina State Highway Patrol referred the matter to the Drug Enforcement Administration, which initiated an undercover operation focussing on petitioner's identity and drug-related activities.

At the direction of law enforcement officials, the confidential informant made several recorded telephone calls to petitioner. During these telephone calls, petitioner provided the confidential informant with instructions regarding the completion of the drug delivery to New York City and arranged for a meeting. At approximately 7:00 p.m. on March 2, 1988, petitioner met with the confidential informant at the Market Diner in New York City, where petitioner informed the confidential informant that petitioner had already lined up a buyer for one of the kilograms of cocaine. Upon leaving the Market Diner, petitioner was arrested. Petitioner thereafter consented to a search of his New Jersey residence, where law enforcement officials found approximately $10,000 in cash, documents appearing to record sales of cocaine, approximately one pound of marijuana, and a .25 caliber automatic pistol.

Shortly thereafter, the Drug Enforcement Administration initiated civil administrative forfeiture proceedings with respect to a Chevrolet and $10,000 in cash, which were seized at the time of petitioner's arrest. Petitioner was notified of the forfeiture proceedings, but failed to file a claim either to the vehicle or to the cash. On June 1, 1988, the $10,000 in cash was forfeited to the Gov-

---

1. In relevant part, § 2255 states:

 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

 *See also* Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 1 advisory committee's note (comparing § 2255 motion with writ of habeas corpus).

ernment and on June 24, 1988, the Chevrolet was forfeited to the Government, pursuant to 19 U.S.C. § 1609.

On May 9, 1988, petitioner pleaded guilty to a one-count Superseding Information charging him with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. At sentencing, this Court ruled that petitioner's offense level be increased by two levels for possession of a gun during the commission of his offense, pursuant to United States Sentencing Guidelines ("USSG") § 2D1.1(b)(1) (Oct. 1987), and by an additional two levels because of petitioner's role as a supervisor in his offense, pursuant to USSG § 3B1.1(c). This Court sentenced petitioner to a one-hundred-and-thirty-five-month term of incarceration and imposed a fine of $182,335. *See* Sentencing Hearing Transcript, *United States v. Rivera*, S 88 Cr. 204 (DNE) (S.D.N.Y. July 29, 1988), at 15–16.

Thereafter, petitioner's trial counsel filed a notice of appeal. On October 27, 1988, the Court of Appeals for the Second Circuit dismissed the appeal on the ground that petitioner had defaulted by failing timely to submit any papers in support of his appeal. *See United States v. Rivera*, No. 88–1339 (2d Cir. Oct. 27, 1988).

In his § 2255 motion, petitioner claims that this Court erred in calculating petitioner's sentence in two respects: first, petitioner challenges the upward adjustment of his sentence for possession of the gun found in his apartment; second, petitioner claims that he was entitled to a downward departure at sentencing because of his status as a deportable alien. Petitioner further claims that his sentence violated the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution because of the prior civil admin-

istrative forfeiture proceedings. Finally, petitioner claims that his counsel was ineffective in that counsel (1) had a conflict of interest because he also represented the individual who allegedly owned the gun found in petitioner's apartment; (2) misinformed petitioner regarding what the range of petitioner's potential sentence would be if petitioner pleaded guilty; (3) failed to inform the Government of petitioner's willingness to cooperate in other investigations; (4) failed to provide petitioner with a copy of the presentence investigation report; and (5) failed to file an appeal on petitioner's behalf.

For the reasons discussed below, petitioner's claims with respect to his sentence and with respect to the Double Jeopardy Clause are procedurally barred.[2] In any event, even if neither of these claims is procedurally barred, they are nonetheless without merit. Furthermore, petitioner's ineffective-assistance-of-counsel claims are also without merit.[3]

### DISCUSSION

■ At the outset, this Court finds that petitioner is procedurally barred from bringing two of his claims on the instant § 2255 motion. Specifically, petitioner is procedurally barred from his claims regarding errors in sentencing and violation of the Double Jeopardy Clause.[4] It is well settled in this circuit that a petitioner who fails to raise a claim on direct appeal cannot raise that claim on a § 2255 motion "unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *Billy–Eko v. United States*, 8 F.3d 111, 114 (2d Cir.1993) (citing *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)); *see also Campino v.*

**2.** On March 28, 1995, this Court granted petitioner's motion for leave to amend his § 2255. Petitioner's supplemental motion papers, which were filed on June 12, 1995, were docketed by the Clerk's office as a new case under the caption *Rivera v. United States*, 95 Civ. 4372 (DNE). The additional claims contained in petitioner's supplemental motion papers are nevertheless addressed in this Opinion.

**3.** Petitioner also requests that this Court consolidate petitioner's "Motion to Vacate Fine Imposed at Sentencing, submitted on May 19,

1993" with the instant § 2255 motion. This request is denied because petitioner's motion regarding his fine was denied by Memorandum and Order dated October 25, 1993. *See United States v. Rivera*, S 88 Cr. 204 (S.D.N.Y. Oct. 25, 1993).

**4.** Petitioner's ineffective assistance of counsel claims are not procedurally barred in light of the Second Circuit's decision in *Billy–Eko v. United States*, 8 F.3d 111 (2d Cir.1993).

*United States,* 968 F.2d 187, 190 (2d Cir. 1992) (holding that the "cause and prejudice" requirement applies to federal prisoners seeking § 2255 relief for constitutional errors).

As discussed above, although petitioner filed a notice of appeal, he defaulted on his appeal by failing timely to submit papers in support of his appeal. A § 2255 motion is not designed to be a substitute for direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). Having failed to raise his claims with respect to his sentence and with respect to the Double Jeopardy Clause on appeal, petitioner is procedurally barred from bringing these two claims on a § 2255 motion. Moreover, regardless of whether petitioner could establish cause for his procedural default, he cannot meet his burden of establishing that he has been prejudiced by his default because, as discussed below, these claims are without merit. Accordingly, petitioner's claims are procedurally barred.

Even if none petitioner's claims is procedurally barred, the motion must nevertheless be denied because each of petitioner's claims is without merit, as discussed below.

### 1. Errors at Sentencing

Petitioner's first claim is that this Court erroneously calculated his sentence in two regards. First, petitioner contends that his offense level was improperly increased by two levels, pursuant to USSG § 2D1.1(b)(1), because of the automatic pistol that was found in his apartment. Petitioner asserts that the gun belonged to a friend of his and denies that the gun was possessed in connection with petitioner's offense. In addition, petitioner stresses that the gun was found several miles from the scene of petitioner's arrest.

Second, petitioner contends that he was entitled to a "moderate"[5] downward departure at sentencing due to the fact that he will likely be deported once he has completed his term of incarceration. Petitioner argues that because of his status as a deportable alien, he is subject to more onerous conditions of con-

finement by the Bureau of Prisons, including ineligibility for placement in a minimum security prison or for placement in a half-way house or community custody program during the final portion of his prison term. Petitioner further argues that he may be subject to additional incarceration during deportation proceedings, as well as a "life sentence of banishment" from the United States in the form of his eventual deportation.

■ As a threshold matter, although the circuits are divided as to whether and under what circumstances violations of the Sentencing Guidelines are cognizable under § 2255, the Court of Appeals for the Second Circuit has held that errors in sentencing procedure are cognizable under § 2255

only if the petitioner "establish[es] that the violation constituted a 'constitutional or jurisdictional' error, *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)), or by showing that the error resulted in a ' "complete miscarriage of justice" ' or in a proceeding ' "inconsistent with the rudimentary demands of fair procedure." ' " *Id.* 441 U.S. at 784, 99 S.Ct. at 2087 (quoting *Hill,* 368 U.S. at 428, 82 S.Ct. at 471).

*Femia v. United States,* 47 F.3d 519, 525 (2d Cir.1995) (quoting *Lucas v. United States,* 963 F.2d 8, 12–13 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 270, 121 L.Ed.2d 199 (1992)); *see also Brennan v. United States,* 867 F.2d 111, 120 (2d Cir.) (stating that, absent exceptional circumstances, "nonconstitutional or nonjurisdictional questions are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal" notwithstanding whether cause and prejudice could be shown under *Frady* ), *cert. denied,* 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989).

■ Petitioner's contention that this Court improperly enhanced his sentence pursuant to USSG § 2D1.1(b)(1) does not set forth a claim of constitutional or jurisdictional error, but rather a claim that this Court misapplied a particular provision of the Sentencing

---

**5.** Specifically, petitioner moves for a downward departure of six months.

Guidelines in calculating his sentence; even were petitioner's contention correct, the error would not rise to the level of constitutional error. Nor does petitioner's claim raise the specter of a "complete miscarriage of justice" or a "proceeding inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). To the contrary, this Court heard argument from both defense counsel and the Government regarding the § 2D1.1(b)(2) enhancement. *See* Sentencing Hearing Transcript, *United States v. Rivera*, S 88 Cr. 204 (DNE) (S.D.N.Y. July 29, 1988), at 7–9, 13–14.

■ Similarly, petitioner's contention that he was entitled to a downward departure at sentencing does not make out a claim of constitutional or jurisdictional error. Nor does this contention raise the possibility of a defect that would render petitioner's sentencing hearing a "complete miscarriage of justice" or a "proceeding inconsistent with the rudimentary demands of fair procedure."

As such, under the law of this circuit, petitioner's claims regarding purported errors at sentencing are not cognizable under § 2255. Even if petitioner's claims were cognizable under § 2255, however, both claims are without merit for the reasons discussed below.

### a. Upward Adjustment for Possession of a Firearm

■ The version of the Sentencing Guidelines that governed petitioner's sentencing provided for an increase in the base offense level of two points "[i]f a firearm or other dangerous weapon was possessed during commission of the offense." USSG § 2D1.1(b)(1) (Oct.1987) (emphasis added).[6] The Commentary to § 2D1.1 states in relevant part: "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1), comment.

(n. 3). Petitioner's contention that he was not the owner of the automatic pistol found in his apartment is inconclusive. The Sentencing Commission's use of the term "possess" in both § 2D1.1(b)(1) and the accompanying commentary makes clear that the upward adjustment applies to a defendant who is in possession of a gun during the offense even if he does not hold actual title to the gun.

■ Moreover, petitioner's denial that the gun was possessed in connection with his drug offense is contradicted by the record. As noted in the commentary to § 2D1.1(b)(1), the two-level upward adjustment is appropriate unless it is "clearly improbable" that the automatic pistol seized from petitioner's apartment was connected to his offense. *See United States v. Sweet*, 25 F.3d 160, 162 (2d Cir.1994). "Applicability of the specific offense characteristic of weapons possession during a narcotics offense is governed by the relevant-conduct guideline." *Id.* at 162 (citing USSG § 1B1.3(a)(ii); *United States v. Quintero*, 937 F.2d 95, 97 (2d Cir.1991); *United States v. Pellegrini*, 929 F.2d 55, 56 (2d Cir.1991) (per curiam)). "With offenses that involve 'aggregate harms', such as drug offenses, relevant conduct consists of all 'acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* at 162–63 (quoting USSG § 1B1.3(a)(2) and citing *Pellegrini*, 929 F.2d at 56).

■ While it is true that petitioner was arrested several miles from his apartment where the gun was located, the Government presented evidence that prior to the March 2, 1988 meeting at the Market Diner, the confidential informant made several telephone calls to petitioner at his apartment in New Jersey. Thus, the Government presented persuasive evidence that petitioner was in possession of a gun during negotiations with his co-conspirators—*ie.* during the course of the conspiracy to which petitioner pleaded guilty. This Court's ruling that the presence of the gun in petitioner's apartment warrant-

---

**6.** It should be noted that the current version of § 2D1.1(b)(1) does not differ in any significant way and provides: "If a dangerous weapon (in-cluding a firearm) was possessed during commission of the offense, increase by 2 levels." USSG § 2D1.1(b)(1) (Nov. 1, 1994).

ed the two-level sentence enhancement pursuant to USSG § 2D1.1(b)(1) was, therefore, fully supported by the record. *See United States v. Schaper*, 903 F.2d 891, 896 (2d Cir.1990) (use of "house phone to arrange cocaine deals" was factor supporting application of § 2D1.1(b)(1) upward adjustment where gun was found in defendant's residence and defendant was arrested while driving away from his residence); *see also United States v. Stewart*, 926 F.2d 899, 902 (9th Cir.1991) (mere fact that gun was not present at place where overt act took place does not mean that gun had no connection to the conspiracy); *United States v. Durrive*, 902 F.2d 1221, 1231–32 (7th Cir.1990) ("while temporal and spatial dimensions of a conspiracy are often difficult to delineate, the presence of the gun in the conspirator's headquarters several hours before a buyer was to appear and the day after negotiations took place strongly support a finding that Durrive possessed the weapon during the life of the conspiracy"). Accordingly, this claim is without merit.

### b. *Downward Departure Due To Status as a Deportable Alien*

In *United States v. Restrepo*, 999 F.2d 640, 644 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993), the Court of Appeals for the Second Circuit addressed the question of whether a defendant's status as a deportable alien could ever form the basis for a downward departure from the Sentencing Guidelines. The *Restrepo* court held that "pertinent collateral consequences of a defendant's alienage" might serve as a valid basis for a downward departure "if those consequences were extraordinary in nature of degree." Turning to the specific consequences of defendant Restrepo's alienage, however, the court held that "none of the bases relied on by the district court, *i.e.,* (1) the unavailability of preferred conditions of confinement, (2) the possibility of an additional period of detention pending deportation following the completion of sentence, and (3) the effect of deportation as banishment

from the United States and separation from family, justified the departure." *Id.*

■ The pertinent collateral consequences of petitioner's alienage, as set forth in petitioner's moving papers, are precisely those addressed by the Second Circuit in *Restrepo:* the unavailability of preferred conditions of confinement, the possibility of an additional period of detention pending deportation, and deportation itself. The Second Circuit has ruled that such collateral consequences of petitioner's alienage do not serve as a valid basis for a downward departure. Accordingly, petitioner's claim that he was entitled to a downward departure at sentencing is without merit.

### 2. *Double Jeopardy and the Prior Civil Forfeiture Proceedings*

Petitioner's next claim is that his sentence violated the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution because of the prior civil administrative forfeiture proceedings brought by the Drug Enforcement Administration with respect to a Chevrolet and the $10,000 in cash seized at the time of petitioner's arrest.

The Double Jeopardy Clause guarantees that no criminal defendant will be subjected to multiple punishments for the same offense unless those punishments are imposed in the course of a single proceeding. *United States v. Halper,* 490 U.S. 435, 440, 450, 109 S.Ct. 1892, 1897, 1903, 104 L.Ed.2d 487 (1989); *United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, New York,* 954 F.2d 29, 34 n. 1 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992).

■ As a threshold matter, petitioner's claim is without merit because petitioner was never placed in jeopardy by the civil administrative forfeiture proceedings and therefore was not twice placed in jeopardy. Despite being notified of the forfeiture proceedings, petitioner did not file a claim to either the Chevrolet or the cash.[7] Having failed to file any claim to these items of property, peti-

---

7. *See* Declaration of William J. Snider, Forfeiture Counsel of the Drug Enforcement Administration

¶¶ 4–5 (July 18, 1995).

tioner waived any legitimate claim to the seized property, "which would vitiate any claim of 'punishment' based on the civil forfeiture." *See United States v. Amiel,* 995 F.2d 367, 371–72 (2d Cir.1993). Thus, having failed to contest the forfeiture of the seized property, petitioner was not a party to the civil administrative forfeiture proceedings and, therefore, was not put in jeopardy by those proceedings. *See United States v. Torres,* 28 F.3d 1463 (7th Cir.) (no double jeopardy in violation of Fifth Amendment where defendant filed no claim in civil administrative forfeiture proceedings), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994); *see also United States v. Nakamoto,* 876 F.Supp. 235, 238–39 (D.Haw.1995) (no double jeopardy where defendant did not contest forfeiture of seized property and thereby "avoided putting his guilt or innocence at issue in a judicial forfeiture proceeding involving the defendant as a party and carrying potential 'punishment' at the end"); *United States v. Kemmish,* 869 F.Supp. 803, 805 (S.D.Cal.1994) (where defendant did not file claim for property subject to civil administrative forfeiture proceedings, he was nonparty to the proceedings and, therefore, was not placed in jeopardy); *United States v. Walsh,* 873 F.Supp. 334, 336 (D.Ariz.1994) (having elected not to make a claim to seized property in civil administrative forfeiture proceedings, no determination of defendant's personal culpability occurred and, therefore, there was no bar to subsequent criminal prosecution); *Crowder v. United States,* 874 F.Supp. 700, 703–04 (M.D.N.C.1994) (no punishment to defendant and, thus, no basis for double jeopardy where defendant defaulted or failed to file a claim in civil administrative forfeiture proceedings).

 Even if petitioner was placed in jeopardy by the forfeiture proceedings, petitioner's double jeopardy claim is without merit because petitioner's criminal prosecution and the forfeiture proceedings both arose from a single, coordinated prosecution. In *Halper,* the Supreme Court emphasized that the Double Jeopardy Clause does not "prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." 490 U.S. at 450, 109 S.Ct. at 1902–03.

In *United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994), the Court of Appeals for the Second Circuit addressed the issue of whether a civil forfeiture proceeding "was part of a single, coordinated prosecution of persons involved in alleged criminal activity." The *Millan* court noted that "a single prosecution seeking multiple punishments may be brought without double jeopardy implications." *Id.* In *Millan,* the defendants were indicted on narcotics conspiracy charges. Several months after the indictments were filed, the Government filed a civil forfeiture action with respect to certain seized property. The defendants settled the civil forfeiture action and then moved to dismiss the criminal indictment on the ground that the Government was barred by the Double Jeopardy Clause from prosecuting them because settlement of the civil forfeiture action constituted prior punishment for the same criminal conduct.

In rejecting the notion that the Double Jeopardy Clause was implicated by the simple fact that the criminal prosecution and the civil forfeiture action were brought as two separate proceedings, the *Millan* court observed: "Civil and criminal suits, by virtue of our federal system of procedure, must be filed and docketed separately. Therefore courts must look past the procedural requirements and examine the essence of the actions at hand by determining when, how, and why the civil and criminal actions were initiated." *Id.* The court emphasized the significance of when each proceeding was commenced to the court's determination of whether the Government was acting "abusively by seeking a second punishment when it is dissatisfied with the punishment levied in the first action." *Id.* (citing *Halper,* 490 U.S. at 451 n. 10, 109 S.Ct. at 1903). The court ruled that the forfeiture proceedings did not implicate the Double Jeopardy Clause, observing that "the actions were both started on July 30, 1991, when arrest and seizure warrants were issued based on the same affidavit by a DEA agent. These warrants were issued as part

of a coordinated effort to put an end to an extensive narcotics conspiracy." *Id.*

■ In the instant case, it is clear that the forfeiture proceedings brought with respect to the Chevrolet and the $10,000 cash were part of a single prosecution of petitioner by the Government. Both items of property were seized at the time of petitioner's arrest, whereupon the Drug Enforcement Administration immediately commenced civil administrative forfeiture proceedings. Thus, in the instant case, as in *Millan,* "the record before us gives ample indication that it was clear to all parties that the government intended to pursue all available civil and criminal remedies, regardless of the individual outcome of any of these claims." *Id.* at 21. Because the civil administrative forfeiture proceedings and the criminal prosecution of petitioner were both part of a single, contemporaneous prosecution of petitioner, the Double Jeopardy Clause was not implicated by petitioner's criminal prosecution. Accordingly, the claim is without merit.

### 3. Ineffective Assistance of Counsel

Petitioner argues that he was denied effective assistance of counsel for several reasons. The Sixth Amendment to the Constitution guarantees criminal defendants the right to counsel. As the Supreme Court has noted, "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The right to counsel protects a defendant's right to a fair trial because "access to counsel's skill and knowledge is necessary to accord defendants . . . 'ample opportunity to meet the case of the prosecution.'" *Id.* at 685, 104 S.Ct. at 2063 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275–76, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942)). Because counsel plays such a crucial role, the Supreme Court has recognized that "'the right to counsel is the right to the effective assistance of counsel.'" *Id.* at 686, 104 S.Ct. at 2063 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)). Thus, if a defendant's counsel fails to render effective legal assistance, the defendant's Sixth Amendment rights are violated. *See id.*

The Supreme Court has established a two-part test for determining whether an attorney's representation constitutes ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687, 104 S.Ct. at 2064. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

■ To satisfy the first prong of the *Strickland* test, a defendant must show that "his attorney's performance 'fell below an objective standard of reasonableness.'" *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65), *cert. denied,* —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). The Supreme Court has eschewed articulating a rigid set of standards for determining whether an attorney's conduct is reasonable, stating instead that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

■ The Supreme Court has, however, explained the method that a federal court should employ in determining whether an attorney's performance was reasonable. The Court has instructed that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). This presumption is necessary because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. at 2065 (citation omitted). Further, a court may not

use hindsight in evaluating whether an attorney's conduct was reasonable. *See id.*

With the standard for ineffective assistance of counsel in clear view, each of petitioner's claims is examined in turn.

### a. Attorney Conflict of Interest

Petitioner claims that his counsel was ineffective because counsel also represented an individual who, petitioner claims, owned the gun found in petitioner's apartment; thus, counsel's representation of petitioner was allegedly infected by a conflict of interest. Petitioner avers that because of counsel's conflict of interest, counsel declined to bring to the court's attention the fact that the gun found in petitioner's apartment was owned by counsel's other client.

 In order to establish ineffective assistance of counsel on the basis of a conflict of interest, petitioner must demonstrate (1) the existence of an "actual conflict of interest" between himself and trial counsel, and (2) that the actual conflict "adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *United States v. Contractor,* 926 F.2d 128, 134 (2d Cir.), *cert. denied,* 502 U.S. 838, 112 S.Ct. 123, 116 L.Ed.2d 91 (1991). Proof of merely "the possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan,* 446 U.S. at 350, 100 S.Ct. at 1719; *accord United States v. Jones,* 900 F.2d 512, 519 (2d Cir.) ("The defendant must identify an actual conflict of interest."), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990). Once the actual conflict has been established, the defendant must also show that the actual conflict caused a " 'lapse in representation.' " *United States v. Iorizzo,* 786 F.2d 52, 58 (2d Cir.1986) (quoting *Cuyler v. Sullivan,* 446 U.S. at 349, 100 S.Ct. at 1718–19).

Petitioner's allegation that his counsel declined to bring to the Court's attention that the gun did not belong to petitioner is simply untrue. At the sentencing hearing, petitioner's counsel argued vigorously against an upward adjustment to petitioner's offense level for possession of the gun. *See* Sentencing Hearing Transcript, *United States v. Rivera,* S 88 Cr. 204 (DNE) (S.D.N.Y. July 29, 1988), at 6–9. Specifically, petitioner's counsel argued that the Government could not prove that petitioner had the gun in his apartment at the times the confidential informant made telephone calls to petitioner at his apartment to arrange for transportation of the cocaine. *Id.* at 7–8. Petitioner's counsel also advised the Court of petitioner's claim that the gun belonged to petitioner's friend, *id.* at 9, and reiterated that the gun was not on petitioner's person when petitioner was arrested, *id.* at 7–8. Thus, petitioner's allegation that his counsel hid these facts from the Court to protect his counsel's other client is palpably false and clearly belied by the record.

 Petitioner's claim that his counsel was ineffective because counsel's representation was infected by a conflict of interest is meritless. Whether or not petitioner held actual title to the automatic pistol found in his apartment was not relevant to this Court's determination of petitioner's sentence.[8] Petitioner has failed to demonstrate the existence of an actual conflict of interest between petitioner and his attorney. Even if such an actual conflict of interest existed, petitioner has failed to demonstrate that it adversely affected his counsel's performance. Accordingly, petitioner has failed to demonstrate that his counsel was ineffective on this ground.

### b. Advice Regarding Potential Sentence

Petitioner next claims that his counsel was ineffective for allegedly misinforming petitioner as to what the range of petitioner's potential sentence would be if petitioner pleaded guilty. Petitioner alleges that his counsel advised him that the gun found in his apartment would not affect his sentence and that petitioner would receive a lower sentence if he pleaded guilty rather than proceeding to trial.

---

**8.** To the extent that petitioner's claim that the gun was left at his apartment by a friend tended to support petitioner's argument that he did not possess the gun in connection with his offense, this argument was vigorously presented at sentencing by petitioner's counsel, who specifically called this Court's attention to petitioner's disclaimer of ownership of the gun.

Petitioner's allegations are, however, contradicted by his own testimony at his plea allocution hearing:

THE COURT: Has any prediction or have any promises been made to you as to what your sentence will be?

THE DEFENDANT: No.

Plea Allocution Hearing Transcript, *United States v. Rivera*, S 88 Cr. 204 (DNE) (S.D.N.Y. May 9, 1988), at 11.

■ Moreover, even if petitioner's allegations were true, they would be insufficient in this circuit to make out a claim of ineffective assistance of counsel. In *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989), the Court of Appeals for the Second Circuit ruled that an attorney's erroneous Sentencing Guideline range prediction made to a defendant did not render the defendant's guilty plea involuntary or support a claim of ineffective assistance of counsel. The *Sweeney* court noted that at the plea allocution hearing the district court had informed the defendant as to the statutory parameters of his sentence and made sure defendant understood that, within those parameters, his sentence was within the district court's sole discretion. *Id.* at 69–70. Noting that the district court had found that the defendant "knowingly entered the pleas and acknowledged that no promises had been made regarding his sentence," *id.* at 70, the *Sweeney* court rejected defendant's claim that his counsel was ineffective for erroneously predicting the defendant's sentence range:

The law in this circuit prior to the Sentencing Guidelines was clear that a defendant was not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence. . . . Now that we have the Guidelines, we do not believe that appellant may avoid the effect of our precedents by characterizing a mistaken prediction as ineffective assistance of counsel.

*Id.* (citations omitted). The court stressed that "[d]efendants may not plead guilty in order to test whether they will get an acceptably lenient sentence." *Id.*

At petitioner's plea allocution hearing, petitioner made clear that he understood the parameters of his sentence and that his sentence, within those parameters, was within this Court's sole discretion:

THE COURT: For your information I would discuss the possible penalties for the charge which you intend to plead guilty.

Do you understand that the maximum penalty for count 1 is 40 years' imprisonment plus a fine of two million dollars? Do you understand that?

THE DEFENDANT: I do understand that.

THE COURT: There is also a special mandatory assessment of $50 on the count to which you intend to plead guilty. A special assessment will be imposed at the time of sentence.

THE DEFENDANT: I understand.

THE COURT: For your information, sentencing guidelines have been established that must be applied in determining the actual term of your punishment. Until a pre-sentence report is completed by the probation department, neither the court nor your lawyer can accurately predict what the range of your actual sentence will be under the guidelines.

You cannot be sentenced under any circumstances to a period of incarceration that exceeds the maximum sentence authorized by the statute that I just explained to you.

Further, you must understand that your sentence will be at least the minimum term supplied by the statute that you violated, as I discussed a few moments ago.

Do you understand that?

THE DEFENDANT: I do understand that.

THE COURT: The court may in appropriate cases impose a sentence greater or lesser than the guideline range although it of course cannot impose a sentence greater than the statutory maximum or lesser than the statutory minimum. You will be given an opportunity to read the pre-sentence report prior to sentencing and indeed you are instructed to review the report with your attorney.

You may challenge any of the findings of that record, and if you do not make a timely objection to the findings with which

you disagree you may lose the opportunity to do so. This court will resolve all disputed facts to determine your guideline sentence. Do you understand that?

THE DEFENDANT: I understand.

. . . . .

THE COURT: Has any prediction or have any promises been made to you as to what your sentence will be?

THE DEFENDANT: No.

Plea Allocution Hearing Transcript, *United States v. Rivera*, S 88 Cr. 204 (DNE) (S.D.N.Y. May 9, 1988), at 7–11.

■ In sum, like the defendant in *Sweeney*, petitioner was informed of the statutory parameters of his sentence, understood that his sentence was within this Court's sole discretion, and stated that no prediction or promises had been made to him as to what his sentence would be. Under the rule of *Sweeney*, therefore, petitioner's allegation that his attorney erroneously predicted what his sentence would be does not form the basis for a claim of ineffective assistance of counsel. *See also Chukwurah v. United States*, 813 F.Supp. 161, 166 (S.D.N.Y.1993) ("[P]etitioner argues that defense counsel misleadingly assured petitioner that his sentence would be less than 41 months. This contention does not suffice as a basis for an ineffective assistance claim as a matter of law.") (citing *Sweeney*, 878 F.2d at 70). Accordingly, this claim is without merit.

### c. Failure To Inform the Government of Petitioner's Willingness To Cooperate in Other Investigations

Petitioner's next contention is that his counsel was ineffective for allegedly failing to inform the Government of petitioner's willingness to cooperate in other investigations. In his motion papers, petitioner does not indicate in even the most general terms the nature of the assistance or information he could have offered the government.

■ Petitioner's claim is without merit because, even if his allegations are accepted as true, petitioner has failed to show that he was prejudiced by his attorney's conduct. As discussed above, in order to demonstrate ineffective assistance of counsel, petitioner

must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. at 2069. Thus, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

■ Petitioner has failed utterly to demonstrate that he was prejudiced by his counsel's alleged failure to inform the Government of petitioner's willingness to cooperate. As an initial matter, petitioner has failed to set forth in his motion papers even the most vague description of the type of assistance or information he might have offered the Government. But even if petitioner had set forth such a description, the Government was under no obligation to accept petitioner's offer of cooperation. Moreover, the Government's discretion to accept or reject a defendant's offer of cooperation is not conclusive of the impact of a defendant's cooperation on his sentence: When a district court is presented at sentencing with a defendant's record of cooperation with the Government, it is within the court's sound discretion whether to reduce the defendant's punishment in light of the defendant's record of cooperation. *See United States v. Ah–Kai*, 951 F.2d 490, 491 (2d Cir.1991) ("While 'the prosecutor is in the best position to know whether defendant's cooperation has been helpful … the extent of that assistance and its impact on the sentence are matters left within the sound discretion of the sentencing judge.' ") (quoting *United States v. Keene*, 933 F.2d 711, 714 (2d Cir.1991)). Thus, petitioner's counsel's alleged failure to inform the Government of petitioner's willingness to cooperate does not demonstrate a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *See United States v. Zackson*, 6 F.3d 911, 921 (2d Cir.1993) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). Therefore, petitioner's claim fails to satisfy

the prejudice prong of the *Strickland* test for ineffective assistance of counsel. Accordingly, this claim is without merit.

#### d. Failure To Provide Copy of Presentence Investigation Report

Petitioner next claims that his counsel was ineffective for allegedly failing to provide petitioner with a copy of the Presentence Investigation Report prepared by the Probation Department. Petitioner's allegation is, however, flatly contradicted by his own statements in court at his sentencing:

THE COURT: Mr. Rivera, have you had an opportunity to read the presentence investigation report?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the report with your attorney, Mr. Blossner?

THE DEFENDANT: Yes, I have.

THE COURT: Mr. Blossner, have you had an opportunity to read the report?

MR. BLOSSNER: I have, your Honor.

THE COURT: And have you discussed it with your client?

MR. BLOSSNER: I have, your Honor.

Sentencing Hearing Transcript, *United States v. Rivera*, S 88 Cr. 204 (DNE) (S.D.N.Y. July 29, 1988), at 2. Given petitioner's statements at his sentencing hearing, the Court finds that petitioner's allegation in his moving papers that his counsel failed to provide him with a copy of the Presentence Investigation Report is "palpably false." *See United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir.1970) (district court may deny petitioner's § 2255 motion without a hearing "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false, or patently frivolous") (citations omitted). Accordingly, this claim is without merit.

#### e. Failure To File Notice of Appeal

Petitioner's final claim is that his counsel was ineffective for allegedly failing to file an appeal on petitioner's behalf, despite the fact that petitioner allegedly requested his counsel to do so. Petitioner is incorrect in his assertion that his attorney failed to file a notice of appeal because counsel did, in fact, file such a notice. Nevertheless, petitioner's claim may be construed as a claim of ineffective assistance of counsel on the ground that his attorney failed timely to file any papers in support of petitioner's appeal. Because petitioner failed timely to file any papers in support of his appeal, the Court of Appeals for the Second Circuit dismissed his appeal. *United States v. Rivera*, No. 88–1339 (2d Cir. Oct. 27, 1988).

As discussed above, in order to demonstrate ineffective assistance of counsel, petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Although the *Strickland* test was formulated to determine whether trial counsel was ineffective, "the same test is used with respect to appellate counsel." *Mayo v. Henderson*, 13 F.3d 528 (2d Cir.) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993)), *cert. denied*, —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994).

■ Despite counsel's failure to file any papers in support of petitioner's appeal, this claim is without merit because petitioner has failed to demonstrate that petitioner was prejudiced by his counsel's conduct. Construing petitioner's moving papers liberally, petitioner seems to assert that counsel should have raised the various claims brought in the instant motion on direct appeal. As discussed above, however, none of petitioner's claims is meritorious. Thus, his counsel's failure to file any papers in support of petitioner's appeal does not demonstrate a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *See United States v. Zackson*, 6 F.3d 911, 921 (2d Cir.1993) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). Since petitioner has failed to demonstrate that he was prejudiced by his counsel's conduct on appeal, petitioner has failed to establish ineffective assistance of counsel on that ground. Accordingly, petitioner's final claim is without merit.

*CONCLUSION*

Having reviewed petitioner's various claims and found them to be without merit, and having found, moreover, that petitioner's claims with respect to his sentence and with respect to the Double Jeopardy Clause are procedurally barred, the motion is denied.

SO ORDERED.