2 F.3d 17
 UNITED STATES of America, Appellee,
v.
Eric MILLAN, Defendant,
Alfred V. Bottone, Sr., also known as Fat Al, also known as
Valentino A. Bottone, Anthony Bottone, and Alfred
Bottone, also known as Alfie,
Defendants-Appellants.
 Nos. 1637 to 1639, Dockets 93-1129, 93-1133 and 93-1134.
 United States Court of Appeals,
Second Circuit.
 Argued June 22, 1993.
Decided Aug. 5, 1993.
 
 Maurice H. Sercarz, New York City (Gerald Labush, David Breitbart, of counsel), for defendants-appellants.
 Dietrich L. Snell, Asst. U.S. Atty., S.D.N.Y., New York City (Roger S. Hayes, U.S. Atty., Paul G. Gardephe, Asst. U.S. Atty., of counsel), for appellee.
 Before: NEWMAN, Chief Judge, VAN GRAAFEILAND, and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Defendants-appellants Alfred V. Bottone, Sr., Anthony Bottone, and Alfred Bottone, Jr. ("the Bottones") appeal from an order entered in the United States District Court for the Southern District of New York (Shirley Wohl Kram, Judge ), denying their motion to dismiss the government's indictment against them. The indictment, initially filed on August 14, 1991, charges the Bottones with, inter alia, participation in a narcotics distribution conspiracy involving "massive amounts of heroin," in violation of 21 U.S.C. Secs. 812, 841(a)(1), 841(b)(1)(A), and 846 (1988).
 
 
 2
 Subsequently, on December 26, 1991, the government also filed an in rem civil forfeiture suit against certain properties and bank accounts later claimed by Alfred Bottone, Jr. in connection with the alleged criminal narcotics activity, pursuant to 21 U.S.C. Sec. 881 (1988). On January 20, 1993, the Bottones entered into an agreement with the government ("the Stipulation") pursuant to which the government relinquished its claim to $101,000 in several bank accounts and various other assets. These funds were relinquished to enable the Bottones to pay attorneys' fees arising from their defense of the civil and criminal actions. In return, the Bottones relinquished any claim to $240,000 in cash plus other properties seized by the government. In accord with the Stipulation, the in rem civil suit was subsequently dismissed.
 
 
 3
 On February 23, 1993, the Bottones moved to dismiss the criminal indictment against them. According to the Bottones, the government was barred from prosecuting them by the Double Jeopardy Clause of the Fifth Amendment, because the Stipulation acted as prior punishment for the same crimes. The district court denied the motion, finding, inter alia, that the civil and criminal prosecutions constituted a single proceeding, and, therefore that the prohibitions of the Double Jeopardy Clause had not been implicated.
 
 
 4
 On appeal, the Bottones again assert that the Stipulation should be considered prior punishment under the Double Jeopardy Clause, and thus a conviction following the government's criminal prosecution would constitute a second punishment for the same offense.
 
 
 5
 For reasons set forth below, we affirm the judgment of the district court.
 
 BACKGROUND
 
 6
 This case arises from a Drug Enforcement Administration ("DEA") investigation of an alleged large scale organization dedicated to the distribution of heroin, whose members purportedly include the Bottones. On July 30, 1991, arrest warrants were issued by United States Magistrate Judge Kathleen Anne Roberts for over forty individuals, including the Bottones, based on the affidavit of Special Agent Dongilli of the DEA. Also based on this affidavit, Magistrate Judge Roberts issued seizure warrants on the same day for various assets alleged as facilitators of or proceeds from the illegal activity, pursuant to the federal civil forfeiture statute. See 21 U.S.C. Sec. 881 (1988). Among the assets seized under the civil warrants was the "Auction Cars" used car business, including all the vehicles and bank accounts associated with Auction Cars.
 
 
 7
 On August 14, 1991, the Bottones were named in an initial grand jury indictment, which accused them with, inter alia, participation in a conspiracy to distribute "massive amounts of heroin," in violation of 21 U.S.C. Secs. 812, 841(a)(1), 841(b)(1)(A) and 846 (1988). The indictment also included a criminal forfeiture count for properties derived as the proceeds from, or used to facilitate drug violations, pursuant to 21 U.S.C. Secs. 853(a)(1) and (a)(2). Shortly thereafter, on August 16, 1993, the United States District Court issued a post-indictment restraining order, pursuant to 21 U.S.C. Sec. 853(e)(1)(A), preventing the Bottones from transferring or dissipating the properties named in the criminal forfeiture count.
 
 
 8
 On October 2, 1991, a pretrial conference was held at which the Bottones claimed that they lacked the funds needed to pay their attorneys' fees. However, instead of filing a motion for a pretrial hearing to obtain the release of funds for attorneys' fees under this Court's ruling in United States v. Monsanto, 924 F.2d 1186 (2d Cir.) (in banc), cert. denied, Y--- U.S. ----, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991), the Bottones and the government began settlement negotiations concerning the assets involved in both the August 1 civil seizures and the August 16 criminal restraining order.
 
 
 9
 In the meantime, Alfred Bottone, Jr. filed an administrative claim challenging the government's seizure of Auction Cars. In response, on December 26, 1991, the government filed an in rem civil forfeiture complaint against Auction Cars and its associated assets. In its complaint, the government incorporated the indictment by reference and exhibit. Only Alfred Bottone, Jr. filed an answer to this complaint, asserting his ownership of the defendant-in-rem properties as well as various defenses to the government's claims.
 
 
 10
 On October 5, 1992, the grand jury issued a superseding indictment, which included a count alleging that the Bottones and their co-defendants had obtained property in excess of $100 million from the charged narcotics violations. The indictment also charged the Bottones and their co-defendants with joint and several liability for the forfeiture of such property, pursuant to 21 U.S.C. Sec. 853(a). Finally, the indictment disclosed the government's intention to satisfy any forfeiture liability with "substitute property" of the Bottones, even though said property was not directly implicated in the narcotics conspiracy, pursuant to 21 U.S.C. Sec. 853(p) (1988).
 
 
 11
 On January 20, 1993, the Bottones entered into the Stipulation, pursuant to which the government agreed to release $101,000 in cash as well as various other real and personal assets to the Bottones in order to enable them to pay attorneys' fees. In return for these concessions, the Bottones agreed to forfeit certain other properties--including $236,804.48 in bank deposits, two parcels of real estate, and two business interests--to the government, and also renounce any claim associated with certain other properties. Pursuant to the Stipulation, the civil suit was dismissed.
 
 
 12
 On February 23, 1993, before the start of the criminal trial, the Bottones filed a motion to dismiss the superseding indictment on double jeopardy grounds. Relying on the Supreme Court's decision in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Bottones claimed that the settlement agreement constituted "punishment" within the meaning of the Double Jeopardy Clause. The district court denied the motion to dismiss and found that Halper did not apply in this case because: (1) the civil and criminal prosecutions constituted a single proceeding; (2) the value of the seized property was not "overwhelmingly disproportionate" to the value of the illegal narcotics giving rise to the criminal indictment; and (3) the defendants were estopped from making this assertion because they voluntarily entered into the Stipulation. The Bottones subsequently filed notices of appeal and moved for a stay of the trial pending appellate review. The district court denied the stay, and proceeded to empanel a jury. The Bottones then petitioned this Court for a Writ of Prohibition to stay further trial proceedings. On March 9, 1993, we denied this petition.
 
 
 13
 The Bottones now appeal on double jeopardy grounds from the underlying order denying the motion for dismissal.
 
 DISCUSSION
 
 14
 On appeal, the Bottones claim that the settlement of the civil action acted as punishment under the double jeopardy clause, thereby precluding the government's criminal prosecution for the same offenses. In effect, the Bottones are contending that the district court erred in failing to require the government to justify its seizures as not being "overwhelmingly disproportionate." We need not reach this question, however, because we conclude that the government has employed a single proceeding to prosecute the Bottones, and, therefore, the proscription of the Double Jeopardy Clause does not apply.
 
 
 15
 The seminal case in this realm of double jeopardy jurisprudence is United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In Halper, the Court analyzed the application of a $130,000 civil fine to a $585 fraud committed against the government, and held that such an "overwhelmingly disproportionate" assessment acted as punishment within the meaning of the Double Jeopardy Clause. See id. at 448-49, 109 S.Ct. at 1901-02. This Court has held that Halper applies to civil forfeiture proceedings under 21 U.S.C. Sec. 881. See United States v. Certain Real Properties and Premises Known as 38 Whalers Cove Drive, Babylon, New York, 954 F.2d 29, 35 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992).
 
 
 16
 In Halper the Supreme Court noted that multiple punishments arising out of one proceeding fall outside the scope of its analysis concerning the proportionality of a civil sanction. See Halper, 490 U.S. at 450, 109 S.Ct. at 1903 ("[T]he decision [does not] prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding."). Indeed, it is well established that Congress may impose multiple punishments for a single crime without violating the Constitution's double jeopardy restrictions. See, e.g., United States v. Woodward, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (per curiam) (holding that Congress intended multiple punishment for actions involving both false statements to a government official and concealment of currency); Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) ("Where ... a legislature specifically authorized cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct ... the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."). It is also clear that a single prosecution seeking multiple punishments may be brought without double jeopardy implications. See Ohio v. Johnson, 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) ("[T]he [Double Jeopardy] Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution."). Thus, the threshold issue before us is whether the civil forfeiture suit, which resulted in the aforementioned Stipulation, was part of a single, coordinated prosecution of persons involved in alleged criminal activity. We conclude that it was.
 
 
 17
 In the instant case warrants for the civil seizures and criminal arrests were issued on the same day, by the same judge, based on the same affidavit by the DEA agent. In addition, the Stipulation agreed to by the parties involved not only the seized properties of the civil suit, but also properties named in the criminal indictment that were under restraining order. Furthermore, the civil complaint incorporated the criminal indictment. Finally, the Bottones were aware of the criminal charges against them when they entered into the Stipulation. Given these circumstances, we reach the conclusion that the civil and criminal actions were but different prongs of a single prosecution of the Bottones by the government.
 
 
 18
 The Bottones point out, correctly, that the civil and criminal actions were filed separately with their own docket numbers. This factor, however, is not dispositive in determining whether the government is employing a single proceeding in its prosecution of a defendant. Civil and criminal suits, by virtue of our federal system of procedure, must be filed and docketed separately. Therefore, courts must look past the procedural requirements and examine the essence of the actions at hand by determining when, how, and why the civil and criminal actions were initiated. In the instant case we note that the actions were both started on July 30, 1991, when arrest and seizure warrants were issued based on the same affidavit by a DEA agent. These warrants were issued as part of a coordinated effort to put an end to an extensive narcotics conspiracy. We therefore must conclude that the civil forfeiture suit and the criminal prosecution at issue here constituted a single prosecution against the Bottones.
 
 
 19
 In so holding we are cognizant that one of the Halper Court's concerns was that the government might act abusively by seeking a second punishment when it is dissatisfied with the punishment levied in the first action. See Halper, 490 U.S. at 451 n. 10, 109 S.Ct. at 1903 n. 10. That problem is obviously not present in the instant case, because the civil and criminal actions were contemporaneous, and not consecutive. Indeed, the record before us gives ample indication that it was clear to all parties that the government intended to pursue all available civil and criminal remedies, regardless of the individual outcome of any of these claims.
 
 
 20
 Civil forfeiture was intended by Congress to be a powerful weapon in what has become a bitter and protracted war on drugs. See United States v. 141st Street Corp. by Hersh, 911 F.2d 870, 878 (2d Cir.1990) (noting statute's legislative history), cert. denied, 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). While we have repeatedly cautioned the government that the constitution must never be made a casualty of this war, see, e.g., United States v. Lasanta, 978 F.2d 1300, 1305 (2d Cir.1992), where, as here, constitutional prohibitions are not implicated, the government is not precluded from employing the full range of statutorily authorized penalties at its disposal. See United States v. Halper, 490 U.S. at 450, 109 S.Ct. at 1903.
 
 CONCLUSION
 
 21
 Based on the foregoing, the order of the district court is affirmed.