**UNITED STATES of America, Plaintiff,**

**v.**

**18900 S.W. 50TH STREET, FT. LAUDERDALE, FLORIDA, Broward County, Florida, Which Consists of a Tract or Parcel of Land, Together with all Buildings and Improvements Thereon, Defendant.**

Civil Action No. 93–30301/LAC.

United States District Court,
N.D. Florida,
Pensacola Division.

Sept. 16, 1994.

---

J.D. Roy Atchison, U.S. Attorney's Office, Pensacola, FL, for Plaintiff.

John F. Tierney, III, West Palm Beach, FL, for Defendant.

## ORDER AND MEMORANDUM OPINION

COLLIER, District Judge.

The United States brought this civil forfeiture action pursuant to Title 21, United States Code, Section 881(7) which provides for the forfeiture of property used to facilitate the commission of a drug-related offense punishable by more than one year in prison. 21 U.S.C. § 881(7). The claimant, Howard Messner, filed an answer contesting the forfeiture on the grounds that the property was not used in a manner proscribed by section 881(7). A trial was held on June 17, 1994. Based on the testimony elicited at trial, the Court found probable cause to support the forfeiture of the defendant property. Messner, however, argued that forfeiture of the single family residence located on the property would be unconstitutional as an excessive fine in violation of the Eighth Amendment. Messner also urges dismissal of this action based on improper venue, violation of his

right to due process, and violation of his right against double jeopardy.[1]

### A. Venue

 Messner argues that venue is improper in the Northern District of Florida because the defendant real property is located in the Southern District. Although he acknowledges the amendments to 28 U.S.C. § 1355 and agrees that they now authorize the institution of civil forfeiture proceedings in any district in which any of the acts or omissions giving rise to the forfeiture occurred, [see 28 U.S.C. § 1355(b)(1)(A)], Messner suggests that § 1355 does not apply to cases which accrued prior to the Act's effective date of October 28, 1992.[2] The Court disagrees and finds the Act applicable to cases filed after its effective date. See United States v. 51 Pieces of Real Property, Roswell, New Mexico, 17 F.3d 1306, 1312 (10th Cir.1994). Venue, therefore, is proper in the Northern District.[3]

### B. Due Process

Messner argues that dismissal of the civil forfeiture action against his property is mandated because he was not afforded preseizure notice and a hearing consistent with the Supreme Court's decision in United States v. James Daniel Good Real Property, 510 U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). The Government concedes that the seizure of the defendant, real property was based on an ex parte determination of probable cause. The Government, however, suggests dismissal is not required because an invalid seizure does not otherwise affect a judgment of forfeiture so long as any evidence obtained pursuant to the seizure is not used in any subsequent forfeiture proceeding. See United States v. 51 Pieces of Real Property, 17 F.3d at 1315; United States v. James Daniel Good Property, 971 F.2d 1376 (9th Cir.1992); United States v. Property at 4492 South Livonia Road, Livonia, New York, 889 F.2d

---

1. The parties submitted written closing arguments.

2. The Act refers to the Housing and Community Development Act of 1992, Pub.L. No. 102–550, 106 Stat. 3672.

3. The Court makes the additional finding that § 1355(b)(1)(B) confers both jurisdiction and venue in civil forfeiture cases. See United States v. Contents of Account Number 2033301, 831 F.Supp. 337 (S.D.N.Y.1993).

1258, 1265 (2d Cir.1989), *reh'g. denied,* 897 F.2d 659 (1990).

 Based on the *Good* decision, the initial seizure of the defendant, real property is invalid and the property is due to be returned to the claimant.[4] The question then becomes one of procedure. Although the Court is not at all swayed by the line of cases finding that the Fourth Amendment's exclusionary rule is sufficient to remedy the Fifth Amendment violation,[5] it does not find dismissal mandated.[6]

 A complaint for forfeiture and the warrant of arrest for the seizure of the subject property bear no cause and effect relationship. As explained by the Supreme Court in *Good,* the Government is not required to seek a warrant of arrest for the seizure of the subject real property simultaneous to the filing of its complaint for forfeiture. *Good,* 510 U.S. at ——, 114 S.Ct. at ——, 126 L.Ed.2d at 506–07. The Government in fact may file its complaint, proceed to trial, obtain a judgment of forfeiture, and only then seize the property. Although this is often not the Government's preferred course of action due to its fear of the property being sold or destroyed, there is no impediment to this procedure in theory, and after *Good,* it would seem to be the more prudent course to follow.[7] Accordingly, because seizure of the property is not required for the Government to prosecute the complaint for forfeiture, it therefore follows that invalida-

tion of the seizure does not mandate dismissal of the complaint.

Following *Good,* in the usual case of an invalid seizure, the complaint would remain intact but the property would be returned to the claimant, and the Government then would be required to afford the claimant preseizure notice and an adversary hearing on probable cause prior to any subsequent seizure. In this case, however, despite the illegal seizure, a trial has already been held where the claimant was afforded the full plethora of procedural due process.[8] Under such circumstances, the Court cannot see the logic, as purely a matter of form, in holding another hearing for the purpose of obtaining the identical evidence which was received into court approximately two and one-half months ago. Accordingly, because Messner has been given all the process which would be due in an adversary preseizure hearing, the Court finds that the administrative burdens which would be occasioned by another hearing outweigh any harm to Messner from the Government's failure to afford him preseizure notice and a hearing.

### C. Double Jeopardy

Messner argues that this civil forfeiture action violates the Fifth Amendment's Double Jeopardy Clause because he has already been punished in a criminal proceeding for the same illegal conduct upon which this forfeiture action is based. He maintains that

4. *Good* applies retroactively to civil forfeiture cases pending on the date of its decision. *See Vance v. Southern Bell & Telegraph Co.,* 983 F.2d 1573, 1576 (11th Cir.1993) (citing, *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991)).

5. Under the reasoning of these courts, the exclusionary rule purges any taint associated with the judgment because probable cause for the forfeiture could not have been supported by any evidence obtained pursuant to the illegal seizure. Although certainly a correct analysis of the Fourth Amendment's exclusionary rule as applied to civil forfeitures, it has no bearing on the Fifth Amendment's guarantee of due process. *See United States v. One Parcel of Real Property Located at 9638 Chicago Heights, St. Louis,* 27 F.3d 327 (8th Cir.1994).

6. Although the Court is cognizant of the Eighth Circuit Court of Appeal's conclusion in *One Par-*

*cel of Real Property* that dismissal of the complaint is required under these circumstances, the Court respectfully disagrees and at the same time notes that the Eighth Circuit reached that conclusion without any noted reason.

7. There are numerous measures which the Government can undertake to protect its interest in the property, all much less intrusive than seizure, and all of which impose a minimal burden on the Government when compared to the injury suffered by a property owner as the result of an illegal seizure. *See Good,* 510 U.S. at ——, 114 S.Ct. at ——, 126 L.Ed.2d at 507.

8. Despite his incarceration in a federal correctional institution in Miami, Florida, Messner was present at the trial and had the opportunity to testify himself and cross-examine government witnesses.

the criminal case and this action cannot be considered a "single proceeding" as the law dictates because this action was not instituted until approximately eleven months following the indictment in the criminal case, and that the Government only sought forfeiture of the defendant real property upon its dissatisfaction with the sentence imposed on Messner in the criminal case.

■ In support of his argument, Messner relies on the Supreme Court's decision in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Although *Halper* is the starting point for most double jeopardy analyses, the Court does not find *Halper* controlling in this case. First, the Eleventh Circuit Court of Appeals has recognized that *Halper* does not apply outside the fixed-penalty type case. *United States v. Reed,* 937 F.2d 575, 577 (11th Cir. 1991). Second, *Halper* finds no fault with the Government's pursuit of multiple punishments in the context of a single proceeding so long as the cumulative punishments have been congressionally authorized. *Halper,* 490 U.S. at 451 n. 10, 109 S.Ct. at 1903 n. 10.[9]

Messner cites *United States v. Millan,* 2 F.3d 17 (2d Cir.1993), *cert. denied, Bottone v. United States,* — U.S. —, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994), for the proposition that a civil forfeiture case and a criminal action must be prosecuted contemporaneously in order for them to be considered a single proceeding under *Halper.* In *Millan,* the defendants were charged with conspiracy to distribute heroin. The indictment contained a count for criminal forfeiture of all properties derived from the proceeds of the conspiracy, including a used car business. Following the indictment, however, the Government instituted a civil forfeiture action against the car business. Soon thereafter, the defendants entered into a stipulation with the Government whereby they agreed to the forfeiture of certain properties in exchange for the Government's release of approximately $100,000 in seized funds needed to pay their attor-

ney fees, and the civil action was dismissed. The Government then filed a superseding indictment in the criminal case which contained an additional count for the forfeiture of other properties. The defendants moved to dismiss the superseding indictment on double jeopardy grounds, arguing that the stipulation and settlement entered into in the civil forfeiture case constituted "punishment" under the Fifth Amendment, and therefore they could not be subject to a second punishment. *See id.* at 18–19.

The Second Circuit Court of Appeals disagreed and ruled that double jeopardy had not been violated by the criminal indictment because the two proceedings were part of one, single prosecution against the defendant. The court reasoned that because the arrest warrants and the seizure warrants were issued on the same day, by the same magistrate judge, based on the same probable cause affidavit, and because the civil forfeiture complaint incorporated the criminal indictment, the actions were contemporaneous, not consecutive, thereby not implicating double jeopardy. *Id.* Applying this same reasoning to the facts of the instant case, Messner argues that forfeiture of his property would violate double jeopardy because there was an eleven-month delay between the issuance of the criminal indictment against him and the filing of the civil forfeiture complaint against his property, and therefore the two proceedings cannot be considered contemporaneous.

The Court is not persuaded by Messner's reliance on *Millan.* Although the Court agrees with the conclusion reached by the Second Circuit in that case, it does not believe that in the context of a double jeopardy challenge to a criminal indictment and a civil forfeiture complaint based on the same underlying conduct the analysis should be confined to a strict determination of whether the Government manifested its intent to pursue forfeiture of a defendant's property at the *precise* moment it instituted criminal pro-

---

9. For this reason, the Court is not swayed by Messner's reliance on the Supreme Court's dictum in *Austin v. United States,* 509 U.S. 602, 113

S.Ct. 2801, 125 L.Ed.2d 488 (1993), recognizing that the civil forfeiture laws serve a punitive

ceedings against him, or vice versa.[10] The Second Circuit could not have intended such a myopic interpretation of *Millan,* and even if that was the court's intent in that case, this Court cannot adopt such reasoning because of the problem of line drawing. Applying Messner's strict interpretation of *Millan,* the proceedings in that case would not have been considered a single prosecution if the warrants had been issued on separate days by different judges, but during the same week. Likewise, a civil forfeiture action filed in one district at 8:00 a.m. based on the same conduct underlying a criminal indictment issued in another district at 5:00 p.m. on the very same day would violate double jeopardy because these proceedings could not be deemed "contemporaneous" or "simultaneous" under a strict dictionary definition.[11] Such results are absurd.

▇▇▇▇ This having been said, the Court finds that in this case the Government's pursuit of both criminal and civil penalties against Messner in separate actions does not implicate double jeopardy. First, Congress has authorized both penalties for Messner's conduct. *See* 21 U.S.C. §§ 841(a), 881(7). Second, the eleventh-month delay between the two actions does not necessarily take the proceedings out of the scope of a single prosecution based on the fact that Messner was a fugitive at the time the criminal indictment against him was issued, having staged his own death one year earlier. The Government filed the civil forfeiture action against his property the month following his apprehension and arrest. Although the Court recognizes that Messner's whereabouts were not technically relevant to the institution of the civil forfeiture case against his property, there may have been administrative concerns about filing against a "dead man." Whatever the case, the delay is not fatal to the Government's case because the Government instituted the civil forfeiture action well in advance of Messner's sentencing in the criminal case.[12] Thus, it cannot be said that the Government sought the forfeiture based on its dissatisfaction with the criminal penalty.[13] *See United States v. One Single Family Residence Located at 18755 North Bay Road, Miami, Florida,* 13 F.3d 1493, 1499 (11th Cir.1994).

In *One Single Family Residence,* the Eleventh Circuit found that the Government had not violated the Double Jeopardy Clause by seeking forfeiture of a defendant's real property under 18 U.S.C. § 1955(d) after his conviction under 18 U.S.C. § 1955(b) for his role in the operation of an illegal gambling business on his property.[14] In that case, the Government filed the civil forfeiture complaint approximately five months prior to the issuance of the criminal indictment, and then filed a motion for summary judgment and forfeiture of the property based on the defendant's subsequent criminal conviction. Despite the lapse of time between the institution of the two actions, the court nonetheless concluded that the two proceedings constituted "a single, coordinated prosecution." *Id.* at 1499.[15] Accordingly, notwithstanding the

---

purpose. *See Austin,* 509 U.S. at ——, 113 S.Ct. at ——, 125 L.Ed.2d at 505.

10. The Court would point out that in *Millan* although the Government took the preliminary steps necessary to institute the two actions at the same time, the civil forfeiture complaint was not *actually filed* until five months following the magistrate's signing of the seizure warrants. *Millan,* 2 F.3d at 18–19.

11. This is not to suggest that the Government's timing is not a factor to consider; without question, it is. Indeed, courts must be mindful of the timing of the second punishment because double jeopardy would occur if the Government sought the second punishment only upon dissatisfaction with the punishment imposed in the first action. *See United States v. One Single Family Residence Located at 18755 North Bay Road, Miami, Florida,* 13 F.3d at 1499.

12. Upon his plea of guilty, Messner was sentenced to 151 months imprisonment.

13. The Court is not concerned by the Government's decision to serve Messner with notice of the forfeiture action on the date of his sentencing, as both the filing of the complaint and the seizure took place prior to his sentencing.

14. Section 1955(d) is the equivalent of § 881, except that it is used as a means to combat illegal gambling while § 881 is a weapon in the war on drugs.

15. In his brief, Messner attempts to distinguish *One Single Family Residence* by suggesting that in that case the Eleventh Circuit considered the proceedings simultaneous whereas in this case they are consecutive. First, under a strict timing analysis, the proceedings in *One Single Fam-*

fact that the two actions in this case were filed consecutive to one another in time, double jeopardy has not been implicated because the Government has manifested its intent to seek the full panoply of statutorily-authorized punishment against Messner through a single, coordinated prosecution of his illegal drug activities.

### C. *Excessive Fine*

█ Messner argues that the forfeiture of his property would constitute an excessive fine in violation of the Eighth Amendment. The Government concedes that civil forfeiture actions are subject to challenge under the Eighth Amendment's Excessive Fines Clause. *See Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The Government, however, argues that based on the facts of this case forfeiture of Messner's property would not constitute an excessive fine.

█ Based on the evidence adduced at trial, the Court concludes that forfeiture of the trailer located on the property and the lot itself is not excessive. The Government's appraisal places the market value of the trailer at $7,000 and of the lot at $65,000.[16] The testimony of Charles Ball conclusively established that on at least two occasions he and Messner conducted kilogram-level drug deals in the trailer on the property.[17] Although the Eleventh Circuit has stated that courts are free to consider factors other than the connection between the offense and the property in making this determination, it nonetheless has recognized the connection as a relevant consideration, and in this case, there are no other factors which weigh in favor of a finding of excessiveness relative to the trailer and the lot.

█ However, as the forfeiture relates to the single family residence located on the property, the Court finds that this would constitute an excessive fine under *Austin.* Ball's testimony was clear that the first time he met with Messner on the property to make a drug deal the house was nothing but a concrete slab. He testified further that the last time he was on the property for a drug deal the house was nothing but a wooden frame. The appraisal lists a market value of $190,000 for the house as it existed on August 25, 1993, approximately one year ago.[18] There is no evidence that Messner built the house with proceeds derived from his illegal drug activities; nor is there any evidence that Messner ever conducted drug transactions in the house. Accordingly, the Court concludes that forfeiture of the single family residence would amount to an excessive fine under the Eighth Amendment.

The Court is satisfied with ordering separate judicial sales of the trailer standing alone and the property, including the house as it exists today, with the Government to receive all proceeds from the sale of the trailer and 34% of the proceeds from the sale of the property and house.[19]

**DONE and ORDERED.**

---

*ily Residence* and the proceedings in the instant case both were instituted consecutively. But more importantly, in that case, the Eleventh Circuit did not state that the proceedings themselves were simultaneous. Rather, the court concluded that the *pursuit* of both civil and criminal sanctions by the Government in that case was simultaneous; in other words, it was a "single, coordinated *prosecution.*" *One Single Family Residence,* 13 F.3d at 1499. The Court believes that this is what the Second Circuit intended by its decision in *Millan.*

**16.** This is referred to in the appraisal as "site value."

**17.** Based on his testimony, Ball met with Messner on the property at least two, but no more than four times.

**18.** The appraisal places the market value of the house at completion at $226,809.

**19.** The 34% represents the percentage value of the lot relative to the appraisal amount of the unfinished house with the site value included.