**UNITED STATES of America, Plaintiff,**

v.

**ONE HUNDRED THIRTY THOUSAND FIFTY–TWO DOLLARS ($130,052.00) IN UNITED STATES CURRENCY, Defendant.**

Civ. A. No. 94–D–1654–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 7, 1995.

---

John T. Harmon, Asst. U.S. Attorney and Redding Pitt, U.S. Attorney, Montgomery, AL, for plaintiff.

Jeffery C. Duffey, Montgomery, AL, for defendant.

## CORRECTED MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the plaintiff United States of America's motion filed March 9, 1995, for summary judgment. The claimant Don R. Minefield responded in opposition to said motion and also filed a motion for summary judgment on April 5, 1995. Thereafter, the United States replied on April 10, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the United States' motion for summary judgment is due to be granted and that the claimant Don R. Minefield's motion for summary judgment is due to be denied.

### JURISDICTION & VENUE

Jurisdiction is proper under 21 U.S.C. § 801 *et seq.*[1] The court also has jurisdiction

---

1. Pursuant to 28 U.S.C. § 1331, the federal district courts have "original jurisdiction of all civil actions arising under the .... laws .... of the United States."

over this matter pursuant to 28 U.S.C. §§ 1345 and 1355.[2] Personal jurisdiction and venue are not contested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also*

*Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

## FINDINGS OF FACTS

The United States filed this civil forfeiture action on December 29, 1994, seeking forfeiture of $130,052.00 under 21 U.S.C. § 881(a)(6).[3] The United States alleges that

**2.** Pursuant to 28 U.S.C. § 1345, "the [federal] district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States...." In addition, 28 U.S.C. § 1355(a) provides that "the [federal] district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court

of International Trade under section 1582 of this title."

**3.** The forfeiture provision allegedly implicated provides:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (1) ....
 (6) All moneys, negotiable instruments, securities, or other things of value furnished by any person in exchange for a controlled substance

the defendant $130,052.00 in United States currency was used, or intended to be used, in exchange for controlled substances, or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 et seq., and therefore, it is subject to forfeiture to the United States pursuant to § 881(a)(6).

The United States alleges that the following facts and circumstances support the seizure and forfeiture of the defendant properties. Don R. Minefield (hereafter "Mr. Minefield") allegedly participated in a continuing criminal enterprise and cocaine distribution organization, known as the Oscar Andrews Drug Organization. This cocaine distribution organization has been active in the central Alabama region since at least January 1987. During the course of the investigation of the illegal activities of the organization, Mr. Minefield was identified as a multi-ounce trafficker of cocaine for the Oscar Andrews Drug Organization. He worked in the Montgomery, Alabama, area at the direction of Oscar Andrews. During the investigation, controlled buys of cocaine were made by reliable informants from Mr. Minefield. Also, credible and reliable informants have stated that they have seen Mr. Minefield with large sums of United States currency.

On January 9, 1995, Mr. Minefield began a criminal jury trial in the case of *United States of America v. Oscar Andrews, et al.*, CR–94–62–N, in which he was charged with (a) conspiracy to distribute cocaine and cocaine base (21 U.S.C. § 846—Count I); (b) continuing criminal enterprise (21 U.S.C. § 848(a)—Count II); (c) distribution of cocaine hydrochloride (21 U.S.C. § 841(a)(1)—Counts V, VI and VII). The indictment also contained a forfeiture provision for Mr. Minefield's real estate.

On January 14, 1995, the jury returned a verdict convicting him of all counts and for-

feiting his real estate. Thereafter, on June 12, 1995, Mr. Minefield was sentenced on Count II to life in prison and on Counts V, VI and VII to a term of 240 months. These sentences were to be served consecutively. Also on June 12, 1995, Count I against Mr. Minefield was dismissed.

On February 16, 1994, during the execution of a search warrant at the residence of Mr. Minefield, law enforcement officers discovered and seized approximately $10,000 in United States currency. Pursuant to subpoena, law enforcement officers learned that Mr. Minefield maintained custody of two safety deposit boxes located in Montgomery, Alabama. Upon entry to the safety deposit boxes, law enforcement officers discovered and seized the defendant $130,052 in United States currency.

The United States contends that there is no genuine issue of material fact, and it is entitled to summary judgment as a matter of law on the claim of Mr. Minefield. However, Mr. Minefield contends that the United States is barred from recovering the defendant property from him on the grounds that (1) this forfeiture action violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and (2) this forfeiture action constitutes an excessive fine in violation of the Eighth Amendment to the United States Constitution. Mr. Minefield contends that he is entitled to summary judgment as a matter of law based upon these two claims.

The court will first address separately the two contentions of Mr. Minefield. Namely, whether this forfeiture action constitutes double jeopardy and/or an excessive fine. Next, the court will determine whether the defendant property at issue is subject to forfeiture.

in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
21 U.S.C. § 881(a)(6).

## DISCUSSION

### A. *Double Jeopardy under the Fifth Amendment*

■ Mr. Minefield first contends that because the United States has already proceeded against him in a criminal prosecution, this forfeiture action violates the Double Jeopardy Clause of the Fifth Amendment, and as a result, this action is barred. On the other hand, the United States responds that the controlling case in this circuit is *United States v. One Single Family Residence Located at 18755 N. Bay Rd.*, 13 F.3d 1493 (11th Cir.1994), and thus, this forfeiture and the prior criminal action are a single coordinated action, negating any double jeopardy violation of the Fifth Amendment.

In *One Single Family Residence*, the Eleventh Circuit found that the United States had not violated the Fifth Amendment's Double Jeopardy Clause by seeking forfeiture of a claimant's real property under 18 U.S.C. § 1955(d) after his conviction under 18 U.S.C. § 1955(b) for his role in the operation of an illegal gambling business on his property.[4] In that case, the United States filed the civil forfeiture complaint approximately five months prior to the issuance of the criminal indictment, and then filed a motion for summary judgment and forfeiture of the property based on the defendant's subsequent criminal conviction. Despite the lapse of time between the institution of the two actions, the court held that the criminal prosecution did not constitute a separate proceeding from the parallel civil forfeiture action for double jeopardy purposes. *Id.* at 1499. The court emphasized the fact that the forfeiture action at issue and the criminal prosecution took place at approximately the same time and involved the same criminal violations. *Id.* Thus, the court reasoned that they fell "within the contours of a single, coordinated prosecution." *Id.* However, the court also noted that a double jeopardy problem will arise if the United States sought forfeiture of the defendant property, because it was "dissatisfied with the punishment lev-

ied in the first action." *Id.*; *see also United States v. Millan*, 2 F.3d 17, 20 (2d Cir.1993), cert. denied sub nom. *Bottone v. United States*, —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994).

The court also notes that in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court of the United States recognized that the United States can seek and obtain "both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." *Id.* at 450, 109 S.Ct. at 1903; *see also Millan*, 2 F.3d at 20 (discussing *Halper* and relevant cases concerning multiple punishments under the Double Jeopardy Clause). The Court went on to say that "[s]ince a legislature may authorize cumulative punishment under two statutes for a single course of conduct, the multiple-punishment inquiry in the context of a single proceeding focuses on whether the legislature actually authorized the cumulative punishment." *Id.* at 451 n. 10, 109 S.Ct. at 1903 n. 10.

In this case, the civil forfeiture action was filed after Mr. Minefield's indictment but before his trial and sentencing. Thus, it is clear that the United States did not act out of dissatisfaction with the punishment levied in an earlier proceeding, as no punishment had been imposed when this forfeiture action was filed.[5] Moreover, the court finds that the United States did not delay in filing this action, because the defendant currency was not discovered until after the criminal proceeding was initiated. Furthermore, the court finds that the statutes at issue here provide for the imposition of both criminal and civil penalties. Clearly, based on the foregoing analysis, "double jeopardy has not been implicated because the United States has manifested its intent to seek the full panoply of statutorily-authorized punishment against [Mr. Minefield] through a single, coordinated prosecution of his illegal drug activities." *United States v. 18900 S.W. 50th*

---

4. Section 1955(d) is the equivalent of § 881, except that it involves illegal gambling whereas § 881 is a weapon in the war on drugs.

5. The court notes that it focuses on the time this forfeiture action was filed and not when Mr. Minefield was sentenced.

*Street,* —— F.Supp. —— [1994 WL 879671] (N.D.Fla.1994) (similar analysis) (attached to Pl.'s Br. in Supp. of Mot. for Summ.J.).

### B. *Excessive Fine Under the Eighth Amendment*

■ Mr. Minefield next contends that the forfeiture of the defendant currency as a penalty for the underlying drug offenses is so grossly disproportionate that it violates the Eighth Amendment's Excessive Fines Clause.[6] In regards to this assertion, the United States argues that remedial forfeitures, as allegedly in this case, are not punishment so as to invoke the strictures of the Eighth Amendment, and therefore, the United States contends that the court need not even consider the Eighth Amendment in its analysis of this case.

In addressing this contention, the court recognizes that the Supreme Court of the United States has held that civil forfeiture is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Austin v. United States,* 509 U.S. 602, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993); *Alexander v. United States,* 509 U.S. 544, ——, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993). However, the court also recognizes that the Fifth Circuit has stated that "the logic of *Austin* is inapplicable to § 881(a)(6)—the forfeiture of drug proceeds." *United States v. Tilley,* 18 F.3d 295, 300 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994).

In *Tilley,* the Fifth Circuit held that the forfeiture of illegal drug proceeds cannot be considered punishment and thus subject to the Excessive Fines Clause, as it simply parts the owner with the fruits of the criminal activity. *Id.* at 300. The court's well reasoned discussion focused in part on the following:

> The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity. In short, the wrongdoer has nothing, at least nothing to which the law entitles him, to lose from the possible confiscation of the proceeds from his criminal trade. Thus, we believe the forfeiture of proceeds from illegal drug sales is more closely akin to the seizure of the proceeds from the robbery of a federal bank than the seizure of lawfully derived real property. Consequently, instead of punishing the forfeiting party, the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme.

*Id.* (internal citations omitted); *see also S.E.C. v. Bilzerian,* 29 F.3d 689, 696 (D.C.Cir.1994) (disgorgement of illegal securities trading profits not an additional punishment). Furthermore, based on similar reasoning, the Eighth Circuit has held that for the purposes of an excessive fines challenge under the Eighth Amendment, forfeiture of proceeds of racketeering activity cannot be considered punishment inasmuch as it simply parts the owner from the fruits of criminal activity. *United States v. Alexander,* 32 F.3d 1231, 1236–37 (8th Cir.1994). Based on the above reasoning, the court concluded that "[t]his is not punishment 'within the plain meaning of the word.'" *Id.* (quoting *United States v. Halper,* 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989)). Therefore, the Eighth Amendment is not applicable to the present case.

■ Notwithstanding the above finding, even if the Eighth Amendment is applicable, the court finds that the forfeiture of the defendant currency does not violate it. As previously stated, the Supreme Court of the United States has held that civil forfeiture is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Austin v. United States,* 509 U.S. 602, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993); *Alexander v. United States,* 509 U.S. 544, ——, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993). However, in both *Austin* and *Alex-*

---

6. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

*ander,* the Court "declined to establish a test to determine when such forfeiture is excessive and thereby unconstitutional." *United States v. One Parcel Property,* 842 F.Supp. 1421, 1429 (M.D.Ala.1994). In fact, the Court in *Austin* expressly referred the question of an appropriate test to the lower courts. *Id.* (citing 509 U.S. at ——, 113 S.Ct. at 2812); *see also Yee v. City of Escondido,* 503 U.S. 519, 538, 112 S.Ct. 1522, 1534, 118 L.Ed.2d 153 (1992) ("[p]rudence dictates that we allow the lower courts to consider that question in the first instance.").

Justice Scalia, in his *Austin* concurrence, set forth a test to determine when a forfeiture is excessive. Specifically, Justice Scalia stated that the "relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *Austin,* 509 U.S. at ——, 113 S.Ct. at 2815 (Scalia, J., concurring in part and concurring in judgment). This "instrumentality" test analyzes the "nexus between the property seized and the crime committed." *Id.* ("[t]he question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense." (emphasis in original)).

However, the majority in *Austin* stated the following in specifically rejecting the reasoning of Justice Scalia as being the sole factor for consideration:

> We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture was ... excessive.

509 U.S. at —— n. 15, 113 S.Ct. at 2812 n. 15. The court agrees with the following summarization of results from which *Austin*'s guidance has provided:

The *Austin* Court's decision not to provide a standard of review has caused disagreement among the lower federal courts over the appropriate test for analyzing an Eighth Amendment Excessive Fines Clause defense. This debate has occurred primarily among the district courts. Some courts have applied or indicated support for a "proportionality" analysis without articulating a test; others have adopted Justice Scalia's "instrumentality test"; and others have applied multi-factor tests.

*United States v. One Parcel Property Located at 427 and 429 Hall Street, Montgomery, Alabama,* 853 F.Supp. 1389, 1397 (M.D.Ala. 1994).

In *One Parcel Property,* the court articulated a two step balancing test to determine whether a forfeiture violates the Excessive Fines Clause:

> (1) Was there a "substantial connection" between the defendant property and the drug trafficking in question? If so,
>
> (2) Is the forfeiture of the defendant property a "grossly disproportionate" punishment, given the nature of the drug trafficking involved?

853 F.Supp. at 1399.[7] The court finds this test to be well reasoned and will apply it to the case at bar.[8]

The application of the first step, which is Justice Scalia's instrumentality analysis, has been succinctly summarized by the court in *One Parcel Property* as follows:

> Under the first step, the focus is on the relationship between the property and the offense, i.e. "[w]as it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" Initially, the [United States] has the burden of establishing a "substantial connection" between the defendant property and drug trafficking....
>
> If the [United States] establishes this "substantial connection" and the defendant

---

7. The court notes that this test emphasizes the "instrumentality" analysis but includes the "proportionality" analysis. Therefore, the court is of the opinion that this test strikes "an appropriate balance between curbing judicial discretion and retaining the constitutional norm of proportionality." *One Parcel Property,* 853 F.Supp. at 1399 n. 23 (quoting *The Supreme Court, 1992 Term—Leading Cases,* 107 Harv.L.Rev. 144, 214 (1993)).

8. The court believes that the Eleventh Circuit will adopt a test or a standard that is not inconsistent with this one.

property is found to be "guilty," there is a presumption in favor of forfeiture, and the burden shifts to the claimant. Emphasis is placed upon this first step because the "instrumentality" analysis is consistent with a fundamental principle underlying forfeiture law, i.e., that even an owner who has been merely negligent in allowing his property to be misused by another is properly punished for that negligence.

853 F.Supp. at 1399–1400 (internal citations omitted).

The court finds, as discussed *infra,* that the evidence establishes that there is probable cause to believe that the defendant currency is substantially connected to controlled substances. In using Justice Scalia's language, the relationship of the defendant currency to the illegal drug activity was close enough to render this currency "guilty."

In regards to the second step, the Eleventh Circuit has stated that "[t]he eighth amendment prohibits only those forfeitures that, in light of all relevant circumstances, are grossly disproportionate to the offense committed." *United States v. Monroe,* 866 F.2d 1357, 1366 (11th Cir.1989). Similarly, the court in *One Parcel Property* summarized the second step as follows:

> Under this second step, a claimant who cannot establish an innocent owner defense is still given an opportunity to defeat an *in rem* forfeiture, but the claimant has the burden of proving that the forfeiture of the defendant property is a "grossly disproportionate" punishment given the nature of the "offense committed", that is, the drug trafficking which caused the forfeiture. This requires a court to balance the value of the defendant property against the scope of the drug trafficking. In reviewing the nature of the drug trafficking involved, a court should inquire into such matters as the amount of drugs involved, their value, the length of time over which drug trafficking occurred, and the effect of the distribution on individuals and the community.

853 F.Supp. at 1400. The court cautions that "[r]equiring proof of gross disproportion against a presumption favoring forfeiture" attempts to avoid obvious injustices. *Id.*

Furthermore, the court stresses that the forfeiture of the defendant currency at issue is purely remedial, as it attempts to remedy the wrongful acquirement of proceeds derived from illegal drug transactions. In light of this finding, the court finds it noteworthy that the Supreme Court of the United States in *Austin* stated: "[A] fine that serves purely remedial purposes cannot be considered 'excessive' in any event." 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14.

In this case, the court finds that no reasonable jury could find that the forfeiture of the defendant $130,052 reaches "such a level of excessiveness that in justice the punishment is more criminal than the crime." *See Alexander,* 32 F.3d at 1237 (quoting *United States v. Sarbello,* 985 F.2d 716, 724 (3d Cir.1993)). In making this determination, the court has considered the extent and duration of Mr. Minefield's criminal activities and the gravity of the offense. Specifically, the court took into account the numerous controlled buys of cocaine made by reliable informants from Mr. Minefield and the witnessing of Mr. Minefield with large sums of United States currency. Furthermore, the court finds that the offenses in which Mr. Minefield participated in are of the most serious nature. Thus, the court concludes that this case does not violate the Excessive Fines Clause of the Eighth Amendment.

### C. *Civil Forfeiture Law*

#### 1. *Probable Cause*

 As previously stated, section 881(a)(6), 21 U.S.C., subjects to forfeiture United States' currency exchanged for controlled substances and all proceeds acquired therefrom. The burdens of production and persuasion in § 881 forfeiture proceedings are well established by statute and case law. *See United States v. $121,100.00 in U.S. Currency,* 999 F.2d 1503, 1505 (11th Cir.1993); *United States v. One Parcel of Real Estate,* 963 F.2d 1496, 1499 (11th Cir.1992). When the United States moves for summary judgment in a § 881 civil forfeiture action, the initial burden rests with the United States to establish probable cause to forfeit the property. *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1439 (11th Cir. 1991). If the United States fails to establish

probable cause, summary judgment for the United States is improper.[9] *Id.* at 1439 (citing *United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency*, 897 F.2d 1567, 1570 (11th Cir.1990) (per curiam)). Upon a demonstration of probable cause, the burden of proof shifts to the claimant to prove, by a preponderance of the evidence, that the property is not subject to forfeiture; in other words, despite the government's demonstration of probable cause, the money at issue is not connected or related to unlawful drug activity. *Four Parcels of Real Property*, 941 F.2d at 1438 (citations omitted). If the claimant does not meet this burden, the funds are forfeited to the United States. *Id.* at 1439.

 Whether the United States has demonstrated probable cause is a question of law. *United States v. Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d 895, 903 n. 17 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *United States v. $364,960 in U.S. Currency*, 661 F.2d 319, 323 & n. 12 (5th Cir.1981).[10] The Eleventh Circuit has interpreted the probable cause requirement as "probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." *United States v. A Single Family Residence and Real Property*, 803 F.2d 625, 628 (11th Cir.1986). The United States is not required to "actually prove by a preponderance of the evidence a substantial connection to drug dealing," *Four Parcels of Real Property*, 941 F.2d at 1440 (quoting *United States v. $41,305 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir.1986)), but, rather, establish " 'rea-

sonable ground for belief' that a substantial connection exists between the defendant property to be forfeited and an illegal exchange of a controlled substance." *$121,-100.00*, 999 F.2d at 1506 (citations omitted).

 This burden is "less than prima facie proof but more than mere suspicion." *$121,100.00*, 999 F.2d at 1506 (citations omitted). Moreover, "[t]he existence of probable cause is judged 'not with clinical detachment, but with a common sense view to the realities of normal life.' " *A Single Family Residence*, 803 F.2d at 628 (quoting *Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d at 904).

 The probable cause analysis is flexible with the court focusing on the "totality of the circumstances." *$121,100.00*, 999 F.2d at 1506 (citations omitted). Further, it is well grounded in the law of forfeiture that "it is the totality of the circumstances, and not merely the ... amount of money involved, that gives rise to the finding of probable cause." *$121,100.00*, 999 F.2d at 1506 (quoting *Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d at 903 n. 18). There must be some evidence connecting a large sum of money to an illegal exchange of a controlled substance. *Id.* (citing *Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d at 903). Accordingly, currency alone is insufficient to establish probable cause under § 881(a)(6). *Id.* at 1506.

 In this case, the United States has presented unrefuted evidence that the defendant currency was "substantially connected" with illegal drug transactions.[11] The court finds that the unrefuted evidence presented in paragraph five of the "Verified Complaint for Forfeiture In Rem" clearly is sufficient to satisfy the United States' initial burden.[12] The circumstances presented in

---

**9.** The United States, as the moving party, bears the "initial responsibility of informing the ... court" why it believes it has probable cause for forfeiture. *See Four Parcels of Real Property*, 941 F.2d at 1439 n. 25 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553). Further, the court notes that when the issue of probable cause is decided on summary judgment, "the court may determine probable cause based on all the evidence adduced by the [United States]; in essence, the court considers the [United States'] complaint to be amended to conform to the evidence. *Id.* at 1439 n. 24 (citations omitted).

**10.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**11.** The court notes that "although insufficient by itself to demonstrate a connection to illegal drugs, the quantity of cash seized in this case is highly probative of a connection to some illegal activity." *$121,100.00*, 999 F.2d at 1507 (citations omitted).

**12.** The court stresses that the United States is not required to connect the defendant currency to

paragraph five clearly suggest illegal drug activity on the part of Mr. Minefield.[13] Moreover, Mr. Minefield's conviction of offenses involving controlled substances and the subsequent forfeiture of his real estate are circumstances demonstrating more than a mere suspicion of his involvement in illegal drug transactions. *Four Parcels*, 941 F.2d at 1441. Further, "an issue resolved in the [United States'] favor in a criminal proceeding may not be challenged by [a] defendant in an attendant civil suit brought by the [United States]." *United States v. Schumann*, 861 F.2d 1234, 1237 (11th Cir.1988) (citations omitted).

■ The court finds it noteworthy to address Mr. Minefield's assertion of his Fifth Amendment privilege against self incrimination in response to the United States contentions in paragraph five of the "Verified Complaint for Forfeiture In Rem." The court stresses that "[it] may draw an adverse inference against parties to civil actions when they refuse to testify in response to probative evidence offered against them without violating the parties' Fifth Amendment rights." *United States v. Two Parcels of Real Property*, 868 F.Supp. 306, 311 (M.D.Ala.1994) (citing *United States v. A Single Family Residence*, 803 F.2d 625, 629 n. 4 (11th Cir.1986)); *see also United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir.1991); *Baxter v. Palmigiano*, 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). However, the Eleventh Circuit has recognized an exception to this general rule: "the Fifth Amendment is violated when a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case on summary judgment." *Premises Lo-*

cated at Route 13, 946 F.2d at 756 (citing *Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944, 946–47 (11th Cir.), *cert. denied*, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990)). Essentially, the exception applies when the assertion of the privilege would result in "automatic entry of summary judgment." *Id.* (citations omitted).

■ In this case, Mr. Minefield was no longer a defendant in a criminal proceeding when he asserted his Fifth Amendment right against self incrimination in response to paragraph five.[14] As a result, the court may draw an adverse inference against him concerning responses in his answer in which he asserted his Fifth Amendment privilege. *See Two Parcels of Real Property*, 868 F.Supp. at 311 (citing *A Single Family Residence*, 803 F.2d at 629 n. 4); *Premises Located at Route 13*, 946 F.2d at 756; *Baxter*, 425 U.S. at 318–19, 96 S.Ct. at 1558 (holding that the Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"). Thus, the court infers that Mr. Minefield's answers, to allegations in which he asserted his Fifth Amendment privilege, would not have been favorable to his position as a claimant of the defendant currency. *See Two Parcels of Real Property*, 868 F.Supp. at 311; *Baxter*, 425 U.S. at 318–19, 96 S.Ct. at 1558. In light of this inference and the foregoing circumstantial evidence in paragraph five of the complaint, the court finds that the United States has established probable cause.

2. *Claimant's Burden*

■ The court must next look to whether Mr. Minefield has proved by a pre-

---

any particular drug transaction, and further, the evidence does not have to tie the currency to drugs to the exclusion of all other theories. *$121,100*, 999 F.2d at 1507.

13. In fact, the court is well aware that drug traffickers maintain and handle large sums of United States currency in order to finance their ongoing drug business. As such, they frequently hide proceeds of illegal drug sales in their residences and safety deposit boxes, thus allowing them ready access to the cash, while at the same time, concealing the drug proceeds from law enforcement authorities.

14. On January 14, 1995, Mr. Minefield was convicted in criminal case number CR–94–62–N in this district. This criminal case involved essentially the same facts as those underlying this civil forfeiture action. Thereafter, on January 27, 1995, Mr. Minefield filed his answer to the complaint for forfeiture in which he asserted his Fifth Amendment right against self incrimination in response to paragraph five of the complaint. Thus, at the time his asserted his Fifth Amendment privilege, he was no longer a defendant in a criminal case.

ponderance of the evidence that the money had an innocent source and was not related to any drug trafficking, or otherwise refute the government's showing of probable cause. *United States v. $41,305 in Currency & Traveler's Checks,* 802 F.2d 1339, 1343 n. 6 (11th Cir.1986); *United States v. One Single Family Residence,* 933 F.2d 976, 979 (11th Cir.1991). The court stresses that Mr. Minefield "must do more than show the existence of possible legitimate sources of cash." *$41,- 305,* 802 F.2d at 1345. The court notes that the presentation of an innocent source cannot vitiate the United States' showing that the source of the currency is illegal activity and more importantly, such a possibility does not constitute a preponderance of the evidence. *Id.* The court stresses that Mr. Minefield must establish his financial transactions, and if he fails to meet this burden, the property is forfeited. *Id.* Here, Mr. Minefield does not even contend that the defendant currency was obtained through legal means. In fact, he does not even attempt to rebut the United States' showing of probable cause. As such, the court finds that he has failed to meet his burden.

### CONCLUSION

In sum, the United States has met its burden of proving that it had probable cause to seize the currency and initiate this forfeiture action. Mr. Minefield failed to prove by a preponderance of the evidence that the currency should not be subject to forfeiture. The court has no doubt that the currency seized by the United States came from an illegal source and that it was used or was intended to be used for an unlawful purpose. Accordingly, it is CONSIDERED and ORDERED that the United States' motion for summary judgment be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that the claimant Don R. Minefield's motion for summary judgment be and the same is hereby DENIED.