United States Court of Appeals,

Eleventh Circuit.

No. 95-8330.

UNITED STATES of America, Plaintiff-Appellee,

v.

408 PEYTON ROAD, S.W., ATLANTA, FULTON COUNTY, GEORGIA, Including all buildings and appurtenances thereon, described in Exhibit A attached, Defendant-Appellant,

451 Hope Court, S.W., Atlanta, Fulton County, Georgia, Including all buildings and appurtenances thereon, described in Exhibit B attached, Defendant,

Robert Richardson, Claimant-Appellant,

Carswell Denson, et al., Claimants.

May 15, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-cv-913-RLV), Robert L. Vining, Jr., Judge.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

BLACK, Circuit Judge:

At issue in the present appeal is whether predeprivation notice and a hearing must be provided when the Government executes an arrest warrant against real property, but refrains from asserting physical control. We conclude that the Due Process Clause of the Fifth Amendment mandates provision of such predeprivation procedures even when the seizure of real property is not physically intrusive. Accordingly, we reverse the district court's grant of summary judgment in favor of the United States.

I. *BACKGROUND*

On April 14, 1993, the Government secured ex parte warrants authorizing seizure of 408 Peyton Road, S.W., and 451 Hope Court,

S.W.,[1] properties in which Appellant Robert Richardson held an interest. The warrant applications maintained that Appellant Richardson had financed the acquisition and development of the defendant properties through drug-trafficking activities. In support of these contentions, the Government stated that Richardson's reported income was insufficient to sustain his real estate acquisition and development activities and that Richardson had engaged in a series of suspect financial transactions relative to the properties. The evidence persuaded a United States Magistrate Judge that probable cause existed to believe the properties were involved in or traceable to money laundering proscribed by 18 U.S.C. § 1956.

On April 28, 1993, the Government instituted this civil forfeiture proceeding against the defendant properties pursuant to 18 U.S.C. § 981(a)(1)(A). Upon the filing of the verified complaint, the Clerk of Court issued a warrant directing the United States Marshal "to arrest and take into custody" the defendant properties. On the same date, April 28, 1993, the Government filed a notice of lis pendens in the real property records of the Superior Court of Fulton County, Georgia.[2] On June 3, 1993, a Deputy United States Marshal executed the federal arrest warrants by posting copies at each of the defendant properties. As the

---

[1]By stipulation entered into on October 21, 1994, the property known as 451 Hope Court was dismissed as a defendant in the forfeiture case.

[2]The purpose of a lis pendens is to notify prospective purchasers and encumbrancers that any interest acquired by them in property is subject to the decision of the court in pending litigation. *Beefy King Int'l, Inc. v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972).

dwellings on each property were occupied, the Government elected not to assert immediate physical control over the premises. The record establishes that the Government neither posted warning signs on the properties nor changed the locks.

On July 2, 1993, Appellant Richardson claimed an ownership interest in the defendant properties. On May 5, 1994, Appellant Richardson filed a motion to dismiss, arguing that the Government's failure to provide preseizure notice and a hearing deprived him of property without due process, in violation of the Fifth Amendment. In an order issued on July 11, 1994, the district court rejected Richardson's due process claim. Meanwhile, the Government had filed a motion for summary judgment of forfeiture. By order dated February 10, 1995, the district court granted the Government's motion for summary judgment. Appellant Richardson filed a timely notice of appeal.

## II. *DISCUSSION*

Appellant Richardson advances six grounds for appeal. As we conclude that the Government deprived Richardson of due process by failing to provide notice and a hearing prior to executing an arrest warrant issued against his real property, we decline to address the remaining grounds for appeal.

A. *Due Process Requirements Applicable to the Seizure of Real Property*

In *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the Supreme Court addressed whether the Fifth Amendment Due Process Clause prohibits the Government in a civil forfeiture case from seizing real property without first affording the owner notice and an

opportunity to be heard. The Court noted that, as a general matter, the Government must provide notice and a hearing prior to depriving an individual of property. *Id.* at 48, 114 S.Ct. at 498. The Constitution tolerates exceptions to that general rule only in those "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 53, 114 S.Ct. at 501 (internal quotation marks omitted); *see also Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972). The Supreme Court identified the three-part inquiry set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as the appropriate analytical framework for determining whether seizure of real property for purposes of civil forfeiture justifies such an exception. *Good,* 510 U.S. at 53, 114 S.Ct. at 501. The *Mathews* analysis requires consideration of (1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards, and (3) the Government's interest, including the administrative burden that additional procedural requirements would impose. *Good,* 510 U.S. at 53, 114 S.Ct. at 501.

The importance of the private interests at risk and the absence of countervailing governmental needs convinced the Supreme Court that seizure of real property in a civil forfeiture context was not one of those extraordinary instances that justify an exception to the general rule requiring predeprivation notice and a hearing. *Id.* at 62, 114 S.Ct. at 505. First, the Court

reaffirmed that the right to maintain control over one's home, and to be free from governmental interference, stands as a private interest of historic and continuing importance. *Id.* at 53-54, 114 S.Ct. at 501. Second, the Supreme Court determined that ex parte seizure involves an unacceptable risk of error, affording little or no protection to the innocent owner. *Id.* Third, the Court found no pressing governmental need to seize real property prior to the forfeiture hearing. *Id.* at 56, 114 S.Ct. at 502. Accordingly, the Supreme Court held that, absent exigent circumstances, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture.[3] *Id.*

The Eleventh Circuit recently had occasion to apply *Good* in a factual setting similar to that presented by the instant dispute. In *United States v. 2751 Peyton Woods Trail, S.W.,* 66 F.3d 1164, 1167 (11th Cir.1995), this Court addressed whether the Government had deprived William Richardson of due process when it seized his real property without prior notice and a hearing.[4] As in the

---

[3] "To establish exigent circumstances, the Government must show that less restrictive measures—*i.e.,* a *lis pendens,* restraining order, or bond—would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property." *Good,* 510 U.S. at 62, 114 S.Ct. at 505.

[4] Although it has no bearing upon disposition of the present controversy, we note that both the present case and *2751 Peyton Woods Trail* involve properties situated within an eight and one-half acre tract of land known as the Hope Court subdivision. As Robert Richardson developed Hope Court, William Richardson presumably acquired his interest in the 2751 Peyton Woods Trail property from him. The facts do not disclose what relation Robert and William Richardson share beyond their common last name.

present case, in *2751 Peyton Woods Trail* the Government secured ex parte seizure warrants by convincing a magistrate judge that probable cause existed to believe the real properties were involved in or traceable to money laundering. *Id.* at 1165. After receiving the warrants, the Government executed process on the properties and changed the locks on an uninhabited home situated on the one developed property. *Id.* Based upon our interpretation of *Good,* we held "that the lack of notice and a hearing prior to issuance of the warrants seizing the properties rendered the warrants "invalid and unconstitutional,' and that because the resulting seizure violated [the claimant's] due process rights, the forfeiture action must be dismissed." *2751 Peyton Woods Trail,* 66 F.3d at 1167.

B. *The Due Process Implications of a Nonphysical Seizure of Real Property*

The Government seeks to distinguish the present case from *Good* and *2751 Peyton Woods Trail* based upon its decision to refrain from exercising physical control over the seized premises. The record indicates that the only action the Government took relative to 408 Peyton Road was to execute the arrest warrant. As the defendant property was occupied, the Government elected not to evict the residents, post warning signs, or change the locks. The Government therefore contends that it never "seized" the property within the meaning of *Good* because it refrained from asserting any physical control over the defendant real property.

The *Good* Court never explicitly defined the term "seizure," but the Government suggests we should imply assertion of physical control as an essential element of a seizure because the facts of *Good* involved some level of physical intrusion. The Supreme Court

never indicated, however, that the exercise of physical control over the defendant real property should be regarded as the *sine qua non* of a constitutionally cognizable seizure. To the contrary, the Supreme Court employed the term seizure more broadly to refer to governmental action that deprived claimant Good of significant property interests. *See Good,* 510 U.S. at 49, 114 S.Ct. at 498 (stating that "[t]he Government does not, and could not, dispute that the seizure of Good's home and four-acre parcel deprived him of property interests protected by the Due Process Clause"); *see also United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (holding that, in the Fourth Amendment context, "[a] "seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property"). In essence, the Supreme Court declared in *Good* that property deprivations of the magnitude involved in that case must be preceded by notice and a hearing.

The present case does not involve a physically-intrusive seizure, but still requires this Court to assess whether the magnitude of the private interests at stake require predeprivation notice and a hearing. As the Supreme Court instructed in *Good,* we must evaluate the due process implications of the challenged deprivation under the three-fold test enunciated in *Mathews v. Eldridge.* In particular, although *Good* provides that notice and a hearing must be afforded prior to a seizure of real property that involves some element of physical intrusion, we must determine whether some lesser procedural protection will suffice for deprivations occasioned by nonphysical seizures of real property.

If lesser procedural protections fail to satisfy due process, then even physically unobtrusive seizures of real property must be considered "seizures" within the meaning of *Good.*

1. *The Private Interest Affected by a Nonphysical Seizure*

The first *Mathews* factor requires consideration of the private interest that will be affected by the challenged official action. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The United States essentially argues that the private interest at stake in the present seizure is not commensurate with the interests at stake in *Good* and *2751 Peyton Woods Trail* because the present case does not involve a substantial physical invasion.

This argument misapprehends the import of the Supreme Court's decision in *Good* and our decision in *2751 Peyton Woods Trail.* Neither case supports the proposition that the protections of the Due Process Clause are confined to physical, invasive seizures. To the contrary, the Supreme Court indicated that the mere execution of an arrest warrant implicated interests protected by the Due Process Clause because it bestowed upon the Government important rights of ownership. *See Good,* 510 U.S. at 49, 114 S.Ct. at 498. In particular, aside from the potential for physical intrusion, the seizure of a home gives the Government the right to prohibit sale, to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.[5]

_____

[5]At oral argument, the Government represented that the arrest warrant gave it no greater right in the property than a lis pendens, a device the Supreme Court specifically endorsed as

*Id.* at 54, 114 S.Ct. at 501. As a consequence, even a nonphysical seizure impairs the historically significant "right to maintain control over [one's] home, and to be free from governmental interference." *Id.* at 54, 114 S.Ct. at 501. Although the Government allowed Richardson to maintain possession of his home, *Good* forecloses the argument that the arrest of 408 Peyton Road did not affect any constitutionally significant interests.

Also instructive is the *Good* court's reliance on *Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). In *Doehr,* the Supreme Court struck down a state statute that authorized prejudgment attachment of real estate without prior notice or hearing, even in the absence of extraordinary

---

a valid means of safeguarding the Government's legitimate interests in the forfeited real property. That representation is not only at odds with *Good,* but also contrary to the Government's contemporary understanding of its rights under the arrest warrant. First, the Government evidently believed that it had acquired the power to change locks and post warning signs on the defendant properties, although it declined to exercise this authority in the present case. Deputy United States Marshall Ray Navarro indicated that Government declined to change locks on 408 Peyton Road not because they lacked the authority to do so, but because the properties were occupied. Moreover, Navarro conceded that the Government changed locks and posted warning signs at 2602 Peyton Woods Trail, a related parcel of property seized from Appellant Richardson at the same time as 408 Peyton Road. The Government advances no reason why such rights might have been granted relative to 2602 Peyton Woods Trail, but withheld as to 408 Peyton Road. Second, the Government implies that it had the power to evict occupants from the defendant property. Deputy Marshall Navarro testified that the occupants of 408 Peyton Road were "allowed" to remain in possession, but never suggested that the occupants had any right to remain in possession. As a result, it is evident that the Government understood the seizure of 408 Peyton Road to have secured rights far more extensive than those attendant to the filing of a notice of lis pendens. *See Beefy King Int'l, Inc. v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972) (observing that notice of lis pendens merely warns prospective purchasers and encumbrancers that any interest acquired by them will be subject to determination of the court in pending litigation).

circumstances. 501 U.S. at 4, 111 S.Ct. at 2109. The Court found the statute failed to satisfy the Due Process Clause even though the attachment did not interfere with the owner's use or possession of the property and did not affect rentals from existing leaseholds. *See id.* at 11-12, 111 S.Ct. at 2113. The Supreme Court explicitly rejected the notion that only "complete, physical, or permanent deprivation[s] of real property" trigger due process scrutiny. *Id.* Reliance on *Doehr* reveals that the *Good* Court did not intend for physical control to be of paramount importance when determining whether a constitutionally cognizable "seizure" of real property has taken place.

Nor has this Circuit suggested that the Due Process Clause withholds its protection from seizures that are not physically intrusive. The *2751 Peyton Woods Trail* opinion noted that the Government had changed the locks on an uninhabited home situated on the one developed property, 66 F.3d at 1165, but never intimated that our decision was premised upon so narrow a foundation. To the contrary, the decision affirmatively establishes that we could not have placed dispositive importance upon that factor inasmuch as the Government changed the locks on only one of the defendant properties, but we reversed the forfeiture judgments issued as to both properties. To avoid the specter of confusion, we then specified that "lack of notice and a hearing prior to issuance of the warrants seizing the properties rendered the warrants "invalid and unconstitutional.' " 66 F.3d at 1167; *accord United States v. 9638 Chicago Heights,* 27 F.3d 327, 330 (8th Cir.1994) ("The lack of notice and a hearing prior to the issuance of an arrest warrant for

the seizure of the [defendant real property] renders that warrant invalid and unconstitutional."). The *2751 Peyton Woods Trail* decision therefore supports our holding that a constitutionally cognizable seizure of real property need not involve physical intrusion.

2. *The Risk of an Erroneous Deprivation*

The second *Mathews* factor directs judicial attention to the risk that the procedures employed may result in an erroneous deprivation of the private interest and the probable value, if any, of additional or substitute procedural safeguards. 424 U.S. at 335, 96 S.Ct. at 903. As the Supreme Court recognized in *Good,* the practice of ex parte seizure creates an unacceptable risk of error. *Good,* 510 U.S. at 55, 114 S.Ct. at 501. The ex parte preseizure proceeding offers little or no protection for innocent owners. *Id.* Although Congress clearly intended to protect innocent owners from the expansive grasp of the forfeiture statutes, *see* 18 U.S.C. § 981(a)(2) ("No property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder."), the Government need not offer any evidence on the question of innocent ownership in the ex parte preseizure hearing. *Good,* 510 U.S. at 55, 114 S.Ct. at 502. In any event, ex parte presentation of such evidence would not suffice to protect the innocent owner's interests because "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 170,

71 S.Ct. 624, 647-48, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).  As Justice Frankfurter observed, "[n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."  *Id.* at 171-72, 71 S.Ct. at 649.

3. *The Governmental Interest in Nonphysical, Ex Parte Seizures*

The third *Mathews* factor concerns the Government's interest, including the function involved and the fiscal and administrative burden that additional or substitute procedural requirements would entail.  424 U.S. at 335, 96 S.Ct. at 903.  The governmental interest implicated by the present controversy is not some generalized interest in forfeiting property, but the specific interest in conducting physically unobtrusive seizures of real property prior to a forfeiture hearing.  *Good,* 510 U.S. at 56, 114 S.Ct. at 502.  The Court must determine whether, in the civil forfeiture context, such seizures are justified by a pressing need for prompt action.  *Id.*

In *Good,* the Supreme Court concluded that no pressing need for prompt governmental action justified ex parte seizure of real property in the civil forfeiture context.  510 U.S. at 56, 114 S.Ct. at 502.  In contrast to the situation with personal property, the Supreme Court held that jurisdiction over real property does not depend upon prior seizure.  *Id.* at 57, 114 S.Ct. at 503 (noting that "because real property cannot abscond, the court's jurisdiction can be preserved without prior seizure").  When pursuing the forfeiture of real property, "the res may be brought within the reach of the court simply by posting notice on the

property and leaving a copy of the process with the occupant." 510 U.S. at 58, 114 S.Ct. at 503.

Nor does forfeiture of real property involve the risk that the res will disappear if the Government is required to provide advance warning of the forfeiture action. *Id.* As a consequence, in the typical case, the Government may secure its legitimate interest without seizing the subject property. Sale of the property may be prevented by filing a notice of lis pendens as authorized by state law when the forfeiture proceedings commence. *Good,* 510 U.S. at 58, 114 S.Ct. at 503. If an owner seems likely to destroy his property when advised of the forfeiture action, the Government may obtain an ex parte restraining order, or other appropriate relief, upon a proper showing in district court. *Id.* at 58-59, 114 S.Ct. at 503 (citing Fed.R.Civ.P. 65; *United States v. Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258, 1265 (2d Cir.1989)). Finally, the Government may prevent further illegal activity with search and arrest warrants obtained in the ordinary course. *Good,* 510 U.S. at 59, 114 S.Ct. at 504.

At oral argument, however, the Government maintained that its ability to protect its legitimate interests through the filing of a notice of lis pendens hinges upon its ability to seize the defendant real property. The Government reasoned that a lis pendens required the filing of a complaint, and that the forfeiture complaint could not be filed until the defendant real property had been seized. The Government therefore contends that execution of the arrest warrant constitutes an essential prerequisite to the district court's jurisdiction over the forfeiture action.

The Government's argument disregards the *Good* court's repeated admonition that the district court may preserve its jurisdiction over real property without prior seizure. 510 U.S. at 57, 114 S.Ct. at 503. Although seizure of the res has long been considered a prerequisite to the initiation of in rem forfeiture proceedings, the *Good* Court declared that no such seizure is necessary for a forfeiture action initiated against real property. *Id.* at 57, 114 S.Ct. at 503. In the case of real property, the res may be brought within the reach of the court simply by posting notice on the property and leaving a copy of the process with the occupant. *Id.* at 58, 114 S.Ct. at 503.

As a result, the Government need not await seizure or arrest of the defendant real property to file its civil forfeiture complaint. On the contrary, the Government may file its complaint, proceed to trial, obtain a judgment of forfeiture, and only then seize the property.[6] Once the complaint has been filed, the Government may defeat efforts to sell the property to bona fide purchasers by filing a notice of lis pendens as authorized by state law. *See* Ga.Code Ann. §§ 44-14-610 to 44-14-613 (indicating that a notice of lis pendens may be filed by advising the clerk of the superior court for the county where the real property is located of the parties to the action, the time of the institution of the action, the name of the court in which the action is pending, a description of the real property involved, and a statement of the

---

[6]We note that the United States District Court for the Northern District of Florida reached this same conclusion in *United States v. 18900 S.W. 50th Street,* 915 F.Supp. 1199, 1202 (N.D.Fla.1994).

relief sought regarding the property).  Consequently, in the present case, as in *Good,* there is no reason for the Government to take the additional step of seizing the property without first affording notice and an adversary hearing.  *See Good,* 510 U.S. at 59, 114 S.Ct. at 504.

The Government responds that, even if it attempted to follow these procedures for securing a lis pendens, an arrest warrant would issue pursuant to the forfeiture statute and the Supplemental Rules for Certain Admiralty and Maritime Claims.  Specifically, 18 U.S.C. § 981(b)(2) provides that "[p]roperty shall be seized under ... this subsection upon process issued pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims."  The Admiralty Rules state that "[i]n actions by the United States for forfeitures for federal statutory violations, the clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certificate of exigent circumstances."  Rule C(3), Supplemental Rules for Certain Admiralty and Maritime Claims.  The mere fact that the statute may authorize issuance of an arrest warrant upon the filing of a forfeiture complaint, however, does not indicate that the Due Process Clause permits execution of that warrant prior to provision of notice and a hearing. [7]  To the contrary, as we interpret *Good,* the filing of the complaint and receipt of the arrest warrant may precede provision of notice and

_____

[7]Furthermore, even if a statutory scheme authorized immediate execution of an ex parte seizure warrant, that scheme would have to yield to the requirements of the Due Process Clause.

a hearing, but the execution of the arrest warrant may not. In other words, we hold that the Due Process Clause is not implicated until the Government executes the arrest warrant. Consequently, the Government may comply with the requirements of the Due Process Clause by filing the forfeiture complaint, then refraining from executing the arrest warrant until it has provided notice and a hearing.[8] As occurred in this case, the notice of lis pendens may be filed on the same day as the forfeiture complaint.

C. *The Existence of Exigent Circumstances*

Based on the foregoing, we hold that the procedures employed by the Government in the present case do not comport with the Due Process Clause of the Fifth Amendment unless the existence of exigent circumstances justified the ex parte seizure. *See Good,* 510 U.S. at 56, 114 S.Ct. at 502. In order to establish the existence of exigent circumstances, the Government must demonstrate that means less restrictive than an ex parte seizure—including filing of a lis pendens, restraining order, or bond—would not adequately protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property. *Id.* at 62, 114 S.Ct. at 505. In the present case, the Government has not alleged or established the existence of any exigent circumstances that would excuse the ex parte seizure of Appellant Richardson's real property. As explained previously, the

---

[8]At the risk of stating the obvious, we note that the United States Marshall may not refrain from executing the arrest warrant when such action would contravene a court order. Moreover, if the district court concludes that a claimant has received adequate notice and a hearing, that decision binds the Marshall and requires prompt execution of the warrant.

Government could have protected its legitimate interests in the defendant property by filing a notice of lis pendens or taking other steps short of seizure. The Government therefore deprived Richardson of due process when it seized 408 Peyton Road, notwithstanding its decision not to assert physical control over the property.

### III. *CONCLUSION*

In accordance with the foregoing, we REVERSE the district court order and REMAND with instructions to dismiss the complaint without prejudice.